## ROBERT MOORE *vs.* WILLIAM S. RAYNER.

*Deed—Description—Action for Damages—Party Wall—Title— Rights conferred by an Agreement in a Deed, giving the Grantee the Right to Build against the Wall of a house on the adjoining land—Prescription.*

In January, 1795, N. R. M. made a deed to G. P. for a lot of ground, which was described as beginning at a given point on the south side of B. street, and "running thence west, nineteen feet six inches, bounding on B. street, and then south," &c.; the deed contained an agreement "that the said G. P., his heirs or assigns, shall have full liberty of building against the brick house on the west side of the piece or parcel of ground above described." In October, 1795, N. R. M. conveyed the adjoining lot to J. McK., describing said lot as beginning at the "west corner of G. P's house on B. street, and running thence," &c. In an action by R., claiming under G. P. against M., claiming under J. McK. for damages caused by M., in the year 1876, to the house on R's lot, it was HELD :

1st. That from the express terms of the deed to G. P., the first line of that deed, running west and binding on the south side of B. street, could not be extended beyond the face of the east wall of the house referred to in said deed, notwithstanding the nineteen feet six inches called for in the deed would take it beyond that point.

2nd. That the brick house referred to was a call at which the first line was bound to stop, and beyond which it could not be extended.

3rd. That the title to the whole of the wall mentioned in the deed to G. P. was vested in M.

4th. That the jury were at liberty to find from the deed to J. McK., that between the dates of the two deeds from N. R. M. to G. P. and J. McK., G. P. had erected a house on the lot so conveyed to him, and therefore it was that the first line of J. McK's deed was made to begin, "at the west corner of G. P's house."

5th. That R. had no right to build *upon* the wall *against* which the deed from N. R. M. gave him the liberty of building; and the title to the entire wall being in M., he had a right to take down to

the old wall (fourteen inches in thickness,) a nine-inch wall which either R. or some of those under whom he claimed, had built upon it, and also to remove so much of R's front wall, as was built across the north end of the old wall, and which connected R's front wall with it, for the purpose of placing against that end of the old wall the pilasters, of his (M's) new building. And the removal of such part of the front wall, and the taking down of the side wall, until the old wall was reached, could furnish no cause of action against M., notwithstanding such removal and taking down may have caused R's front wall to bulge out and be in danger of falling, and his building in this way injured.

6th. That the old fourteen-inch wall was not a party wall, as under the deed to G. P., he and his assigns had no title whatever to the wall itself, or any part of it.

7th. That the only right which he and his assigns derived under his deed was the right to build *against* it.

8th. That this did not prevent N. R. M. or his assigns from repairing said wall whenever repairs became necessary, provided such repairs were made in a careful and skilful manner, and with as little damage as possible to the building of R.

Where a right by prescription is sought to be established, the *onus* of proving the prescription is on the party seeking to establish the right.

APPEAL from the Superior Court of Baltimore City.

The case is stated in the opinion of the Court.

*Exception.*—At the trial the plaintiff offered the six following prayers:

1. If the jury shall find from the evidence in this cause, that the wall between the houses of the plaintiff and the defendant was built, as to the northern portion thereof, upon eleven and a half inches of the plaintiff's ground, and as to the southern portion thereof upon fourteen inches of the plaintiff's land, and that the defendant removed any part of the said wall so built upon eleven inches and a half of the plaintiff's land, or any part of the said four-

teen inch wall so built upon plaintiff's land, whereby injury was caused to the house of the plaintiff, then the plaintiff is entitled to recover such damages as the jury may find to have been occasioned by the said wrongful act of the defendant.

2. If the jury shall find, that the wall between the houses of the plaintiff and the defendant was used by both parties owning the land on either side, for more than twenty years, then said wall will be presumed to be a party wall in the absence of a mere permission to use the same, of which there is no evidence, and that the defendant employed one John S. Hogg to tear down the building on his lot and rebuild the same, and that without giving notice to the plaintiff of such intention, the cellar of the house of Moore was dug below the foundation and the party wall aforesaid underpinned by the defendant's employés, and that the party wall aforesaid was so removed and rebuilt, as to cause injury thereto, and the front wall of the plaintiff's house was so cut and separated from the party wall aforesaid, on the fourth and fifth stories thereof, as to loosen the front wall and cause it to topple towards the street so as to hazard the falling of the entire front wall, and make the occupation of the house dangerous, then the plaintiff is entitled to recover such damages as would enable him to reinstate the walls aforesaid in as good condition as they were before the injury aforesaid.

3. If the jury shall find, that the wall between the houses of the plaintiff and defendant was built upon eleven and a half inches of the plaintiff's ground, and that the defendant in erecting the store upon his lot adjacent to the plaintiff's lot, entered upon the land of the plaintiff, and took possession of and used eleven and a half inches thereof, or part of the said wall between the two houses, and erected thereon and in front of said wall an iron pilaster, and has continued since 1876 to keep the same so in use by him, then the plaintiff is entitled to recover such

damages as he may have sustained by such use and occupation of his land.

4. If the jury find that the wall between the plaintiff's house and that of the defendant's, was a party wall, and that the defendant, while constructing a new warehouse adjoining the plaintiff's property, underpinned said wall and removed portions of the same, and that by reason of such underpinning and removals, the plaintiff's property was injured, then the plaintiff is entitled to recover.

5. If the jury find from the evidence, that eleven inches and one-half of the fourteen inch wall, between the warehouse of the plaintiff's and that of the defendant's, is included within the metes and bounds of the plaintiff's title, and that the title to said eleven inches and a half is in the plaintiff, and that those under whom he claims built a nine inch wall upon said eleven inches and a half of the wall aforesaid, and that the defendant tore down this nine inch wall, and thereby caused the plaintiff's front wall to crack and settle, then the plaintiff is entitled to recover.

6. That there is no evidence in this case, that the wall referred to in the deed from Nicholas Ruxton Moore to George Poe, and which deed has been offered in evidence, is the same wall which was standing between the warehouses of the plaintiff and the defendant at the time, it is alleged, the injury complained of occurred.

And the defendant offered the four prayers following:

1. If the jury find from the evidence, that measuring 19 feet 6 inches from the point A., shown on the plat of the premises offered in evidence by the plaintiff, would include the wall between the plaintiff's house and that of the defendant, or any part of said wall; yet if they further find that said wall was the east wall of the house mentioned in the deed from Nicholas Ruxton Moore to George Poe, dated January 7th, 1795, then the legal effect of the deed aforesaid from Moore to Poe, was to convey to Poe

Moore *vs.* Rayner.

the title up to the east face of said wall, with the privilege of building against the same, but that said deed does not convey the title to any part of said east wall or any right therein, except to build against the same.

2. If the jury find that the wall between the plaintiff's and defendant's houses, was the east wall of the brickhouse mentioned in the deed from Nicholas R. Moore to George Poe, then by the terms of said deed, the said George Poe, and those claiming under him, only acquired the right to build against said wall, and acquired no right to build upon the same; and if the jury find that a wall nine inches thick, was built upon the top of said partition wall, and that the front wall of the plaintiff's house was extended nine inches across the top of said partition wall, the right to build said nine inch wall, and to extend the front of the plaintiff's wall nine inches across the said partition wall, was not acquired by said deed, and there is no evidence in this case to show any other legal right on the part of the plaintiff, or those under whom he claims, to make said erections upon the top of said partition wall, and so finding, the defendant was lawfully entitled to remove said erections in the manner shown in the evidence by the letters of defendant to plaintiff, dated August 11th and 14th, 1876, and his reply.

3. If the jury find that the wall between the plaintiff's and defendant's houses, was the east wall of the brickhouse mentioned in the deed from Nicholas R. Moore to George Poe, and that the plaintiff, or those under whom he claims, erected on the top of said wall a nine inch wall, and extended the front wall of plaintiff's house nine inches across the top of said partition wall, and that the alleged bulging of the plaintiff's front wall was caused by the removal by the defendant, in the manner shown in the evidence, of said projections of plaintiff's wall over the top of said partition wall, then the plaintiff is not entitled to recover any damage that he may have

sustained, by reason of the removal of said projections in the manner shown by the evidence.

4. That the plaintiff is not entitled to recover any damage that the jury may find the plaintiff sustained, by the reason of the defective.construction of his own premises, even though the jury may find that such injury proceeded from the repairing of the partition wall between plaintiff's and defendant's houses; provided the jury find that said repairings were carefully and skilfully done by the defendant, after the notice sent to plaintiff by the defendant, dated August 11th and 14th, 1876.

The defendant offered this prayer as qualifications to the second and fourth prayers of the plaintiff, which assume that the wall was a party wall.

The defendant excepted specially to the plaintiff's third prayer, because there was no evidence from which the jury could find the amount of the damage sustained by the plaintiff by the alleged occupation of ground by the pilaster therein referred to.

The defendant excepted to the plaintiff's second and .fourth prayers, because the same submitted to the jury to find that the wall therein mentioned, was a party wall, the same being a question of law.

The Court (GILMOR, J.,) granted the plaintiff's first, second, fourth and fifth prayers, and rejected his third .and sixth prayers, and all the prayers of the defendant.

The defendant excepted. The jury rendered a verdict for the plaintiff, and judgment was entered accordingly. The defendant appealed.

The cause was argued before BARTOL, C. J., STONE, GRASON, MILLER, ALVEY, ROBINSON, IRVING and RITCHIE, J.

*Charles Marshall,* for the appellant.

*Isidor Rayner,* and *Wm. Pinkney Whyte,* for the appellee.

GRASON, J., delivered the opinion of the Court.

The declaration in this case contains two counts, the first of which alleges that the defendant being the owner of a lot adjoining the lot of the plaintiff on the west, entered upon the plaintiff's lot on the 12th day of August, 1876, while erecting a building on his own lot, and broke and entered upon the western wall of plaintiff's property, and, by tearing open, undermining, building against, and weakening the support of the same, did cause the front wall of the plaintiff's house to give way, and to become separated, so as to damage and ruin the same, and so as to permanently injure the plaintiff's property.

The second count charges that said defendant on the 12th day of August, 1876, while erecting on his premises an improvement, with force and arms did cut and tear away a part of the front wall of the plaintiff's building, and did extend the front wall of the defendant's building over and upon the ground of the plaintiff, and took possession of part of the same, so as entirely to deprive the plaintiff of the use of the same. At the trial of the case in the Court below, the plaintiff offered six prayers, the first, second, fourth and fifth of which were granted, and the third and sixth of which were refused; and the defendant offered four, all of which were rejected, and the verdict and judgment being in favor of the plaintiff, the defendant has taken this appeal.

The most important question presented by the prayers, depends upon the construction of the deeds under which the parties respectively claim title. The deed, under which the appellee claims title was executed by Nicholas Ruxton Moore to George Poe, in January, 1795, and the lot thereby conveyed is described as beginning "at the distance of seventy-seven feet east from the intersection of Baltimore street and Hanover street, and on the south side of Baltimore street, and running thence west nineteen feet six inches, bounding on Baltimore street, then south parallel

with Hanover street, forty-two feet, then south-east twenty-two feet to an alley, then east five feet, then north sixty feet, to the place of beginning." Then follows, in the third succeeding clause of the deed, an agreement in the following words: "And the said Nicholas Ruxton Moore doth further agree that the said George Poe, his heirs or assigns, shall have full liberty of building against the brick house, on the west side of the first piece or parcel of ground, as above described."

The deed under which the appellant claims was executed by the same grantor to John McKoy, in October, 1795, and the lot thereby conveyed is described as beginning at the "west corner of George Poe's house in Baltimore street, and running thence on said street, west nineteen feet four inches, to Mr. John Starck's tavern, then south eighty-one feet and an half; thence east thirty feet two inches; thence south twenty-eight and an half feet; thence east five feet, to a five feet alley; thence north twenty-one and an half feet, until it intersects the southeast line of Mr. George Poe's lot; thence northwest until it intersects a line drawn south from the place of beginning, and thence north to the place of beginning."

It was proved by the City Surveyor, who made a survey and plot of the two lots above described, since this suit was instituted, that he first ascertained the location of the south-west corner of Baltimore and Hanover streets, as they had been established some years before by the City, and then from that point measured easterly sixty-six feet to ascertain the south-east corner of Baltimore and Hanover streets, and then, in order to find the beginning of the lot of the appellee, he measured seventy-seven feet east from the intersection of Baltimore and Hanover streets, ascertained by him as above stated, and took the end of that seventy-seven feet line as the true beginning of the appellee's lot, and then measured west along the south side of Baltimore street nineteen feet six inches, as called for in the

deed from Nicholas R. Moore to George Poe, and that the line so run took in eleven and one-half inches of the wall between the appellee and appellant, leaving two and one half inches of said wall to the appellant's lot, but that, as he proceeded southerly, he left less and less of said wall west of the line, and finally, after getting back about twenty feet from Baltimore street, the whole of said wall and some ground west of it was found to be within the plaintiff's line, and that he paid no attention to that part of the deed which provides that George Poe " shall have full liberty to build against the brick house on the west side of the first piece or parcel of ground as above described," and paid no attention to anything but the feet and inches named in the deed. It is very clear, from the express terms of the deed, that the first line of the appellee's deed, running west and bounding on the south side of Baltimore street, cannot be extended beyond the face of the east wall of the brick house referred to in the deed from Nicholas R. Moore to George Poe, notwithstanding the nineteen feet six inches called for in the deed would take it beyond that point; for as the grant was made and accepted with the privilege of building *against* the brick house which stood west of the lot granted, it is perfectly manifest that it was the intention of both parties to the deed that the appellee's line was limited to that brick house. The brick house referred to was a call at which the first line was bound to stop, and beyond which it could not be extended. This principle is too well established to require any citation of authority in its support. The first line of the appellant's deed begins at the west corner of George Poe's house, and the lot conveyed by the deed includes within its lines all the ground which lies west of Poe's house ; and if the jury should find from the evidence that the wall referred to by the surveyor was the east wall of the brick house mentioned in the deed to George Poe, of which there is evidence in the record from

which the jury might so find, it is clear that the whole of that wall was included within the lines of the deed under which the appellant claims, and that the title of the entire wall is vested in him. From this deed it would appear, and the jury were at liberty to find, that between the dates. of the two deeds from Nicholas Ruxton Moore to George Poe and John McKoy, George Poe had erected a house on the lot so conveyed to him, and therefore it was that the first line of McKoy's deed was made to begin " at. the west corner of George Poe's house."

The proof further shows that the wall, a part of which was included within the lines of the appellee's deed as run by the surveyor, was fourteen inches thick, and that. either the appellee or some one of the parties under whom he claims title, had erected a nine inch wall on it, without having first removed its coping stones, and run the nine inch wall up to a height of five stories, and had also built up the front wall of the house on that lot, and had lapped it over the front of the old fourteen inch wall, and that the appellant's agents while engaged in the erection of a large store-house on his lot, had taken down the nine inch wall built on the old fourteen inch wall, and had that portion of the appellant's front wall which was lapped over the north or front end of the fourteen inch wall, removed, and that the severing of the connection of the plaintiff's front wall from the end of the old wall had caused the front wall to bulge out so as to be in danger of its falling into the street. It was also found that the employés of the appellant had underpinned the old fourteen inch wall in the basement, and there was some proof tending to show, that by reason of such underpinning and repairing this wall, it had settled, and, in consequence thereof, the front wall of the appellee had bulged out towards the street. If the fourteen inch wall was the east wall of Nicholas R. Moore's house *against* which the appellee had the liberty of building, he had no right to

build *upon* it, and, the title to the entire wall being in the appellant, he had a right to take it down to the old wall, and also to remove so much of the appellee's front wall as was built across the north end of the old wall, and which connected the appellee's front wall with it, for the purpose of placing against that end of the old wall the pilasters of his new building, and the removal of such part of the front wall, and the taking down of the nine inch side wall until the old wall was reached, could furnish no cause of action against the appellant, notwithstanding such removal and taking down may have caused the appellee's front wall to bulge out and be in danger of falling, and his building in this way injured.

Again, if the fourteen inch wall, spoken of, was the east wall of Nicholas Ruxton Moore's brick house mentioned in his deed to Poe, then that old wall was not a party wall, as under the deed to George Poe, he and his assigns had no title whatever to the wall itself or any part of it.

The only right which he and his assigns derived under his deed, was the right to build *against* it. This did not prevent Nicholas R. Moore and his assigns from repairing said wall, whenever repairs became necessary, provided such repairs were made in a careful and skillful manner, and with as little damage as possible to the building of the appellee.

Nor is there any proof in the record as to the time when the nine inch wall was built upon the old wall, or the front wall of the appellee's connected with the end of the old wall. When a right by prescription is sought to be established, the *onus* of proving the prescription is on the party seeking to establish the right, and in this case the proof does not show that the nine inch wall was built upon the old wall, or the front wall of the appellee's house had been connected with the end of the old wall for twenty years before the commencement of this suit.

Moore *vs.* Rayner.

It appears from the letters of the appellant to the appellee and his reply thereto, as set out in the record, the appellant had a license to enter the building of the appellee for the purpose of securing him and his tenants from any injury, likely to be caused by the acts of the appellant and his agents, theretofore done in taking down the nine inch side wall, and cutting away that part of the front wall which had been built across the end of the old wall, and consequently no right of action exists for such entry, and acts done under the license.

From these views it follows, that there was error in granting the first, second, fourth and fifth prayers of the appellee, and rejecting the four prayers of the appellant.

As a new trial will be awarded, we are required to pass upon all the points presented by the record, and as to the third and sixth prayers of the appellee which are contained in the record, we need only say that they were properly rejected.

*Judgment reversed, and
new trial awarded.*

(Decided 11th July, 1882.)