LIPSCHUTZ v. WEATHERLY.

(Filed February 27, 1906).

*Contracts — Rescission and Cancellation — Substitution — Consideration — Waiver of Damages — Telegram — Evidence.*

1. The defendant having introduced plaintiff's telegram, calling for an answer, it was competent to elicit from him whether or not he answered the telegram, without producing the telegram or accounting for its absence, no question being raised as to its terms.

2. A contract may be discharged by an express agreement that it shall no longer bind either party, provided it is supported by a valuable consideration, which may be either a payment in money, something of value, or by a release of mutual obligations arising out of the contract.

3. Where the defendant consented to the substitution of a new contract, the terms of which differed from the original, the release of the obligations of the old and the substitution of new obligations constitute valuable considerations.,

4. Where the defendant consented to the cancellation or rescission of the original contract, in consideration of a substituted contract, his right to recover damages which had occurred prior to such rescission was waived or surrendered.

5. The release of controverted claims constitutes a valuable consideration.

ACTION by B. Lipschutz against W. H. Weatherly and others, heard before *Judge T. J. Shaw* and a jury, at the November Term, 1905, of the Superior Court of PASQUOTANK.

Plaintiff sued for the recovery of the price of cigars sold and delivered to defendants on July 10, 1904. Defendants admitted the sale and price and set up a counterclaim for damages for breach of contract: The evidence material to

the establishment and breach of the contract was in writing. On September 2, 1901, plaintiff and defendants entered into a contract whereby plaintiff agreed to sell to defendants cigars of a certain brand at $30 per thousand in lots of 5,000. "Terms of sale cash in ten days from shipment less two per cent discount. I agree to give said W & T. exclusive contract of the 44 cigars in all territory in North Carolina lying east of the Atlantic Coast Line R. R. Any orders received by me from that territory shall be turned over to said W. & T. The said W. & T. agree to advertise said cigars, I furnishing matter. This contract shall be binding so long as said W. & T. push the sale of said cigars." On May 28, 1904, plaintiff, by his attorneys, wrote defendants that by reason of non-compliance with the terms of the contract on their part he "has repudiated same, and in future will only sell such cigars to you as you may order on the same terms and conditions as they will ship the same to any other persons in your territory." The breach alleged by plaintiff was the failure by defendants to make payments in ten days. On June 2, 1904, plaintiff wrote defendants referring to the letter of his attorneys of May 28, saying, "And therefore of course we will make you no more shipments under that contract. We shall be more than pleased at any time in the future to sell you any of our cigars which you may desire; however, you can no longer have absolute territory and in the future we will sell goods to whomsoever we please in the territory formerly controlled by you. * * * If you care to handle our cigars on these terms, we shall be pleased to fill any orders which you may furnish. We will not, however, in the future give you any commissions on any goods ordered by any parties in the territory formerly controlled by you, and we reserve the right to ship and sell to whomsoever we please." After some further correspondence, plaintiff, on June 6, 1904, declined to fill an order of defendants until defendants sent to him a telegram dictated by plaintiff, in these words, "We agree to cancella-

tion of previous contract. Ship goods as per terms of your
last letter to us." Defendant Weatherly was asked, on cross-
examination, whether he sent plaintiff telegram in language
above quoted. The telegram was not produced nor was its
absence accounted for. Defendants' objection being over-
ruled, he answered affirmatively, to all of which defendants
duly excepted. Defendant Weatherly testified that prior to
May 28, 1904, they had complied with the contract—had ad-
vertised the cigars, gave up handling other cigars. That they
were wholesale dealers in groceries, cigars and tobacco—had
salesmen on the road selling to their customers—furnished
them with sample boxes to give away—worked this cigar
almost exclusively; had built up a good trade. On a few oc-
casions checks were not sent in ten days—heard no complaint
from plaintiff. Defendants sold the cigars for $35.00 per
thousand. Telegram was sent in reply to one from plaintiff
of June 9, 1904. Defendants introduced evidence showing
sales of cigars by plaintiff's salesman within the territory east
of the A. C. L. Railroad prior to May 28, 1904. Plaintiff
introduced no evidence. The court charged the jury that if
they believed the evidence they should answer the second
issue "Yes" and the fifth and sixth "Nothing." Defendants
excepted. The jury having answered the issues as directed
by the court, judgment was signed for plaintiff, to which de-
fendants duly excepted and appealed.

*Pruden & Pruden, Shepherd & Shepherd* and *W. A. Carr*
for the plaintiff.
*Aydlett & Ehringhaus* for the defendants.

CONNOR, J., after stating the facts: Defendants' first ex-
ception, pointing to the submission of the second issue, is pre-
sented upon their exception to His Honor's charge and will
be considered in that connection. The second exception to
the admisison of defendant Weatherly's statement that he

sent the telegram in reply to plaintiff's of June 9, 1904, can-
not be sustained. The defendants, having introduced plain-
tiff's telegram calling for an answer, it was clearly competent
to elicit from him whether or not he answered the telegram.
There is no rule of law requiring the agreement to rescind or
cancel such a contract as existed between the parties to be evi-
denced by any writing. Certainly the defendant, having
shown a notice on the part of plaintiff that he had elected to
rescind could have been asked the general question whether de-
fendants assented to the rescission. If any question had
arisen in regard to the terms of the language of the telegram,
it would have been necessary to produce it or to account for its
absence. The testimony simply showed, by the admission of
defendant Weatherly, that he sent a telegram in the language
suggested by plaintiff. The exception cannot be sustained.
The real controversy between the parties is presented by de-
fendants' contention. Ist. That conceding the facts to be as
shown by the correspondence, there was no valid rescission of
the original or substitution by new contract, for that the
agreement to rescind is not supported by any valuable con-
sideration. 2nd. That if there was a rescission by mutual
consent, their right to recover damages sustained prior to the
breach was not waived or surrendered. It is well settled that
a contract may be discharged by an express agreement that it
shall no longer bind either party. This is usually and cor-
rectly termed a rescission. It is equally well settled that such
an agreement to operate as a discharge must be supported by
a valuable consideration, which may be either a payment in
money, something of value, or by a release of mutual obliga-
tions arising out of the contract. In *Brown v. Lumber
Co.,* 117 N. C., 287, it is said: "When the contract is wholly
executory, a mere agreement between the parties, that it shall
no longer bind them is valid, for the discharge of each by the
other, from his liabilities under the contract is a sufficient
consideration of the promise of the other to forego his rights.

*  *  *  If a contract has been executed on one side, an agreement that it shall no longer be binding, without more, is void for want of a consideration.  Clark on Contracts, 418.  Of the several methods by which a contract may be discharged, one is by substitution of a new contract, the terms of which differ from the original.  In such cases the release of the obligations of the old and the substitution of new obligations constitute valuable considerations."  "It is also now well settled that ordinarily a written contract, before breach, may be varied by a subsequent oral agreement, made on a sufficient consideration, as to the terms of it which are to be observed in the future.  Such a subsequent oral agreement may enlarge the time of performance, or may vary other terms of the contract, or may waive and discharge it altogether."  *Hastings v. Lovejoy,* 140 Mass., 261.  In *McCreery v. Levy,* 119 N. Y., 1, *Andrews, J.* says: "The agreement annulling the prior contract is supported by an adequate consideration.  The new obligation which G assumed under the contract of October 25, 1882, was alone a sufficient consideration.  There was a consideration also in the mutual agreement of the parties to the prior contract which was still executory, although in the course of performance, to discharge each other from reciprocal obligations thereunder and to substitute a new and different agreement in place thereof."  The principle is well illustrated in *Dreifus Block Co. v. Salvage Co.,* 194 Penn., 475.  Assuming that the determination of the plaintiff to rescind the contract, as communicated by him to defendants on May 28, was a breach of its terms, the defendants may have stood by their rights under the contract and sued for such damages as they sustained.  Instead of doing so, they desired to continue purchasing cigars from plaintiff, who refused to sell on any other terms than an assent to the rescission.  The defendants elected to assent to plaintiff's terms, deeming it conducive to their interests to do so.  The status of the parties at this time is well illustrated by what is said by Mr. *Justice*

140——24

*Dean* in *Dreifus Co. v. Salvage Co., supra.* In speaking of the breach of a contract by defendant to deliver steel at a fixed price, he said: "Assume   *   *   *   that there was a distinct declaration that the company would not perform its contract; still if anything can be clear, it is, that above all things, plaintiff did not want a law suit for damages; at that stage, their damages were wholly uncertain, depending on the fluctuating price of steel; they did know they wanted the steel; what damage they might want by reason of defendants' breach, or what they might sustain, they did not know. In this dilemma they sought for and obtained a new contract expressly cancelling the old   *   *   *   They agreed to accept a fixed quantity and quality of merchandise at fixed times and prices, instead of the uncertain event of a law suit." In *Goebel v. Linn,* 47 Mich., 489, plaintiff had made a contract to furnish defendant, who was a brewer, ice, during the season at a fixed price. During the life of the contract he notified defendant that he would not furnish any more ice unless defendant paid a very much larger price. Defendant, after protesting, assented to the change in price and purchased the ice at the price for which the action was brought. He set up, as a defense, that the note for the price of the ice, was without consideration, etc. *Cooley, J.,* said that the defendant had a right to refuse to buy ice at the advanced price and sue for damages for the breach of the contract. "But defendants did not elect to take that course. They chose, for reasons which they must have deemed sufficient at the time, to submit to the company's demand and pay the increased price rather than rely upon their strict rights under the existing contract." We are of the opinion that the defendants elected to consent to the cancellation or rescission of the original contract, in consideration of the substituted contract by which plaintiffs agreed to sell them cigars upon the terms set out in the letters of May 28, and June 6, 1904, and the telegram of June 9, and that this consent was based upon a valuable considera-

tion. The defendants say that conceding this to be true, their right to recover damages which had accrued prior to such rescission was not affected thereby. Certainly after a contract is discharged, either by rescission or substitution of a new contract, no action can be maintained on the original contract. For any benefits accruing to either party by performance of the contract, unless expressly released, an action as upon a *quantum meruit,* if it be labor performed, or *quantum valebat,* if property received, may be maintained. It is, not upon the contract, but upon an implied *assumpsit.*

In *Dreifus Co. v. Salvage Co., supra,* it is said: "The term cancellation of a contract implies a waiver of all rights thereunder by the parties. If, after a breach by one of the parties, they agreed to cancel it and make a new contract with reference to its subject matter, that is a waiver of any cause growing out of the original breach, and this is the rule even though the original contract was under seal." We have discussed the case upon the assumption that the plaintiff made the first breach of the contract. It is by no means clear that, upon the admitted failure by defendants to pay the bills for cigars within ten days, plaintiff was not released from further performance on his part. It is often difficult to say when, in a bi-lateral contract such as this, stipulations are of the essence of the contract and the failure to perform them releases the other party from further performance. However this may be, there was certainly sufficient doubt to sustain the agreement to rescind or substitute a new contract. It is well settled that the release of controverted claims constitutes a valuable consideraion. It may well be that defendants preferred to enter into the new contract for the purpose of securing the cigars with which to supply their trade, rather than engage in litigation of doubtful result. However this may be, they did so elect, and having procured the cigars upon their express agreement to rescind the original contract, they have no just right to complain if required to do so. If they intended

reserving any demand for damages, common fairness required them to say so. Upon an examination of the entire record we find no error.

The judgment must be

Affirmed.