## SOUTHERN PUBLIC UTILITIES COMPANY v. TOWN OF BESSEMER CITY.

### (Filed 9 May, 1917.)

**1. Municipal Corporations—Contracts—Annulment—New Contracts.**

The duly authorized officials of a municipal corporation may by agreement annul an existing contract for the furnishing of electricity for street lighting purposes by entering into a new contract of more definite terms as to payment, when for the public benefit.

**2. Same—Electricity—Abandonment—Debts.**

Where a municipal corporation had entered into a contract for furnishing electricity for street lights at as low a price as the electric lighting company charged other towns, and thereafter entered into a new and complete contract with the same company to furnish the electricity at a certain price per lamp, expressly annulling the older contract, except as it may be evidence of the amount then due thereunder by the city: *Held*, the rights acquired under the former contract are abandoned and relinquished, except for the purpose of recognizing and collecting the debt.

**3. Appeal and Error—Reference—Findings—Evidence.**

It will be presumed on appeal to the Supreme Court that the referee's findings of fact, approved by the lower court, were based upon sufficient evidence, where the evidence is not set out in the record, and the referee's findings will be adopted.

CIVIL ACTION, heard by *Cline, J.,* upon the report of a referee, at January Term, 1917, of GASTON.

Plaintiff sued for $1,566.87 and interest, being the amount it alleged to be due by the defendant for lights and current furnished to it under a contract, dated 8 November, 1912, between the Southern Power Company and defendant, the plaintiff having succeeded to the rights of the power company under the contract. The power company had previously, in the year 1907, contracted with the defendant to furnish lights to it at as low a rate as allowed to any other town for a similar service. The written contract of 1907 was lost, and parol evidence was offered by the defendant, and admitted by the referee, to show its contents. The exact wording of the clause in that contract as to the rate being as low as that of any other town was not given, and it is stated in the report that "no other stipulation or condition of the contract has been furnished from the testimony." The minutes of the town proceedings with reference to the contract were also lost. The finding as to the contract of 8 November, 1912, is as follows:

1. That on 8 November, 1912, the town of Bessemer City and the Southern Power Company entered into a written contract to the effect

that the power company would furnish lights to Bessemer City for a period of five years from 1 November, 1912, and the town agreed to pay for that period $36 per year per lamp (if 25 to 50 lamps were used), and that payments should be made, under said contract in monthly installments on the 5th day of each month succeeding that in which the service was rendered, as will appear more specifically by reference to said contract introduced in evidence.

2. That at the time the said contract of 8 November, 1912, referred to in the preceding paragraph, was entered into between the parties, the rate given by the power company to said town was as low as that furnished by it to other towns or municipal corporations for similar service.

3. That there was nothing in the contract (of 1907), referred to as the "franchise contract," to disqualify or prevent the town of Bessemer City from entering into and being bound by the terms and conditions of the contract of 8 November, 1912, and the latter, as to the rate stipulated, would govern and control the parties thereto.

The referee further finds that in or about August, 1913, the plaintiff contracted with the town of Belmont to furnish lights to it at $30 per lamp for each year during the continuance of the service, and the cost of the two systems was practically the same, though there was some slight difference in the cost of maintenance in respect to labor required for each. The defendant furnished lights as it had agreed to do in the contract of 1912, and was ready, able, and willing to do so at all times. This continued until 10 March, 1916, when, at the request of the defendant, the plaintiff installed a cheaper plant for lighting the town, it being of less candle power, and was, therefore, cheaper, being similar to the Mount Holly plant. This was used for sixty days by defendant. The defendant fell behind considerably with payments for the lighting service, and plaintiff then agreed that if it would enter into a new contract, and the past-due accounts were paid, it would install permanently the Mount Holly system; but no new contract was made, and the accounts then due to the plaintiff for that lights were not paid. The defendant, though, insisted that it should be allowed some deduction on account of the fact that plaintiff had given a lower rate to the town of Belmont. The referee then finds what is due by the defendant to the plaintiff for lights furnished under the contract of 1912, the balance being $1,494.82 principal, and $102.58 interest, to 29 December, 1916, the date of the report, making, in all, $1,597.40, with interest on the principal from that date. In arriving at the result the referee, whose report is remarkably clear, distinct, and accurate, allowed nothing to the defendant for the difference between the rates charged under the contract of 1912 and those under the Belmont contract.

The referee, from his finding of facts, draws the following conclusions of law:

1. The contract made between the town of Bessemer City and the Southern Power Company, of 8 November, 1912, would govern, control, and supersede any former contract as to the rate for lighting.

2. That there was nothing in the contract of 1907, known as the "franchise contract," to disqualify or prevent the town of Bessemer City from entering into and being bound by the terms and conditions of the contract of 28 November, 1912, and the latter would govern and control as to the rate stipulated therein for lighting.

3. That the. town of Bessemer City is justly due thereon 29 December, 1916, to the Southern Public Utilities Company, the sum of $1,597.40, the same being $1,494.82 principal and $102.58 interest thereon.

The court approved and confirmed the report of the referee and entered judgment in favor of the plaintiff for the amount found by him to be due, and the costs. Defendant appealed.

*Osborne, Cocke & Robinson for plaintiff.*
*Whitney & Whitney and Mangum & Woltz for defendant.*

WALKER, J., after stating the case: We need not enter upon a discussion of most of the questions raised in the briefs. That the aldermen of the town of Bessemer City could not make a contract which in its operation would extend beyond their time of office, under *Wadsworth v. Concord,* 133 N. C., 587, is one of the positions of the plaintiff; but we may pass it by without any expression of opinion upon it, as the decisive question, in our view of the case, is whether the first contract was superseded by the second, the latter being fully substituted for it by the parties. .There is a contention that the first contract has not been established, but only one of its terms, and it is said to be supported by 8 Enc. of Evidence, p. 359; 3 Wigmore on Evidence, sec. 1957, and *Dulin v. Bailey,* 172 N. C., 608. Let this be as it may, as we will confine ourselves to the other and controlling question, and, for the sake of the argument we will assume that the first contract has been sufficiently shown to be as defendant asserts that it was.

It appears from the finding of the referee that the intention of the parties was to come to a fresh agreement in November, 1912, and to enter into a contract, which should be complete in itself, and that there was nothing in the first contract which "qualified" the second or prevented the town from changing the form and substance of its contract as made in 1907, or from making an entirely new contract upon the same subject, as it subsequently did in 1912; and he further finds,

substantially, that the latter contract was intended to take the place of the earlier one. But even if the plaintiff's predecessor had agreed to give to the defendant the lowest of its rates, it was competent for the parties, by mutual agreement, to alter this contract, or to substitute another for it, by fixing a flat or unchangeable rate, as was done by the last contract. There is nothing unlawful in it, nor is it contrary to good morals, but, on the contrary, such a change or substitution may, in certain instances, be beneficial to the town by declaring exactly what the rate per lamp shall be in dollars and cents during the fixed period, so that it will not be subject to change by the power company on account of fluctuations in the cost of production to it, for it may be that even the lowest rate given to another town may, in the future, be raised above that stated in the contract, if the cost and expense of production increases, so as to meet and provide for such an increase. A stationary rate might, therefore, be of value to the town. If the parties had intended to provide for a standard or minimum rate, above which the defendant should not be charged, why was not something said about it in the contract of November, 1912? We cannot look at this transaction from its beginning to its end without concluding that in 1912 the parties were then making a fresh contract, and an entire one, for the future, canceling all those behind them. Every detail of such a contract was provided for in the writing, and there was not the slightest reference to the first contract, or any stipulation of it, and the contract itself states that the prior contract of 12 November, 1908, is canceled and annulled, "and neither party shall have any rights thereunder against the other," except for the purpose of enabling the plaintiff to collect what was then due by the defendant, and it was continued only for that purpose. *Smith v. Pritchard,* at this term. In other words, it was to be no longer of any force or effect, except as evidence of defendant's indebtedness to plaintiff, and so that the same would not be extinguished by repealing the contract, as it was anticipated that such a result would follow. The plaintiff, perhaps, had in mind a decision of this Court in *Lipschutz v. Weatherly,* 140 N. C., 365, and inserted the clause in order to preserve its rights to enforce payment of the amount already accrued. This shows what the parties intended when they met in November, 1912, and carefully prepared the contract to govern for the next five years. Rights acquired under a contract may be abandoned or relinquished either by agreement, or conduct, or by contract clearly indicating such a purpose. *Redding v. Vogt,* 140 N. C., 562; *Falls v. Carpenter,* 21 N. C., 237; *Faw v. Whittington,* 72 N. C., 321; *Miller v. Pierce,* 104 N. C., 389, and cases cited in *Redding v. Vogt, supra.* It was said in *Lipschutz v. Weatherly,* 140 N. C., 365: "Of the several methods by

which a contract may be discharged, one is by substitution of a new contract, the terms of which differ from the original. In such cases the release of the obligations of the old and the substitution of new obligations constitute valuable considerations. It is also now well settled that ordinarily a written contract, before breach, may be varied by a subsequent oral agreement, made on a sufficient consideration, as to the terms of it which are to be observed in the future. Such a subsequent oral agreement may enlarge the time of performance, or may vary other terms of the contract, or may waive and discharge it altogether." It was said in *Mather v. Butler County,* 28 Iowa, 253, 256: "The execution of the second contract was in law a substitute for the first, and an abandonment of it so far as it then remained unperformed; what the plaintiff had performed under it and what he had received under it were thereby closed, and the new contract controlled as to future materials, work, and prices, according to its provisions. We have examined the two contracts, and whether regarded by themselves alone or in the light of the circumstances under which they were concluded, it is our opinion that there was no error in the view of the court. They were not intended to coexist, but the second was designed to take the place of the first and to embody the whole agreement of the parties." And in *Redding v. Vogl, supra,* we said: "If upon the facts of our case, therefore, we can gather that the parties intended the two contracts not to coexist, and the second was designed to take the place of the first, the former must be taken to embody the entire and final agreement of the parties," citing *Mather v. Butler County, supra.* It further appears, by the finding of the referee, that at the time the contract of 8 November, 1912, was executed the rates therein fixed were the lowest allowed to any town.

The findings of the referee, approved by the judge, are adopted by us, if there is evidence to support them, and there is no suggestion that there is none in this case. The evidence was not sent up.

This case and one entitled *Town of Bessemer City v. Southern Public Utilities Company* were consolidated by consent, and referred to Mr. J. W. Keerans, whose report embraces both cases, and only one judgment was rendered, which is applicable to both cases.

We are of the opinion that there was no error in the conclusion of the court or in its judgment.

Affirmed.