This was a civil action brought by the plaintiff, the State Highway Commission, against R. G. Rand and Fidelity and Deposit Company of Maryland, for the recovery of the sum of $63,510.50 for alleged breach of the contract sued on.
On 27 July, 1923, the plaintiff and the defendant, R. G. Rand, entered into a contract for the construction of a certain road leading from Waynesville, N.C. to Pigeon River, in Haywood County, known as State Highway Project No. 940, "being approximately 7.13 miles long and approximately estimated to cost $80,380.00." Prior to this time the plaintiff had contracted the construction of this same road to Alexander 
Patton, and the contract between the plaintiff and the defendant Rand referred to the Alexander Patton contract and made certain of its provisions parts of the contract sued on. Following the execution of the contract sued on, to wit, on 28 July, 1923, the defendant Rand entered into an indemnity or guaranty bond in the sum of $40,000 with the defendant, Fidelity and Deposit Company of Maryland as its surety, with the usual conditions, and the Surety Company was made a party defendant for the purpose of making it liable for the alleged breach of the contract with Rand. The defendants denied any breach of the contract on the part of Rand, alleging that the plaintiff breached the contact by placing without defendants' consent, and without giving the notices required by the contract, men and equipment in charge of one end of the road, thereby rendering it impossible for the defendant Rand to perform and complete the contract on his part. For this alleged breach of the contract on the part of the plaintiff, the defendant Rand pleaded a counterclaim and sought recovery of the plaintiff for $20,722 damages.
The issues submitted to the jury and their answers thereto, were as follows:
"1. Did the defendant, R.G. Rand, commit a breach of his contract with the plaintiff, executed 27 July, 1923, as alleged in the complaint? Answer: Yes. *Page 801 
"2. Did the defendant, Fidelity and Deposit Company of Maryland, commit a breach of its indemnity bond, executed for its codefendant, R. G. Rand, on 27 July, 1923, all alleged in the complaint? Answer: Yes.
"3. What damages, if any, is the plaintiff entitled to recover of the defendants by reason of such breach? Answer: $24,222, with interest from 12 July, 1924.
"4. Did the plaintiff commit a breach of its contract with the defendant, R. G. Rand, executed 27 July, 1923, as alleged in the answer? Answer: No.
"5. Did the plaintiff commit a breach of its contract with the defendant Fidelity and Deposit Company of Maryland, as alleged in the answer? Answer: No.
"6. What damages, if any, is the defendant, R. G. Rand, entitled to recover of the plaintiff by reason of his counterclaim? Answer: Nothing."
DEFINITION OF TERMS
"Engineer" — The State Highway Engineer of the State of North Carolina, duly authorized by the State Highway Commission, acting either directly or through authorized assistants by whom all explanations and directions necessary for the satisfactory prosecution and completion of the work will be given.
Quantities Are Approximate Only. The foregoing quantities are approximate only, being given as a factor for the computation of the total amount of bids, upon which basis such bids are to be computed. The State Highway Commission does not expressly or by implication agree that the actual amount of work and materials will correspond therewith, and reserves the right to increase or decrease the amount of any class or portion of the work and materials as may be deemed necessary or expedient by the engineer.
Examination of Plans, Site, etc. Before submitting a proposal, each bidder should make a careful examination of the attached conditions, specifications and contract, and fully inform himself as to the quality of materials and character of work required, and should further make a careful examination of the source of supply for materials, and should his proposal be accepted, he will be responsible for each and every error in his proposal resulting from his failure or neglect to observe or comply with these instructions.
Additional Work. The contractor shall perform such work, in additional quantities other than those designated in the approximate estimate, as may be deemed necessary to complete fully the roadway as planned and contemplated, and shall receive for such additional work payment in full at the prices shown on the contract and in the same manner as if such work had been included in the original estimate of quantities. *Page 802 
 Progress of Work. The contractor shall within ten (10) days after the award of contract begin and promptly and efficiently prosecute the work with a force adequate to complete the project for which he has contracted within the time fixed therein for completion. Failure to comply with this requirement may result in the annulment of the contract as hereinafter provided.
Character of Workmen and Equipment. The contractor shall at all times employ sufficient labor and equipment for prosecuting the several classes of work to full completion in the manner and time specified. Any person employed by the contractor whom the engineer may deem incompetent or unfit to perform the work shall be at once discharged; such persons shall be employed again on any work which is under the jurisdiction of the State Highway Commission. Failure by the contractor to provide adequate equipment may result in the annulment of the contract as hereinafter provided.
Engineer's Decision Final. It is mutually agreed between the parties to the contract that to prevent all disputes and misunderstandings between them in relation to any of the provisions contained in these specifications, or their performance by either of said parties, the engineer shall be a referee to decide all matters arising or growing out of said contract, between them, and his decisions shall be final and binding upon both parties.
Time of Completion. In computing the time allowance for completing the work, the engineer will allow an additional number of working days over and above the time allowance mentioned in the proposal equal to the number of working days lost by the contractor after starting the work, because the conditions which the engineer considers such as to prevent the work, and during which days work was actually suspended or materially impeded. The basis for computing any extra time allowance will be the weather record kept by the engineer or his assistants. If the satisfactory execution and completion of the contract shall require work or material in greater amounts or quantities than those set forth in the contract, the contract time shall be increased in the same proportion ass the additional work bears to the original work contracted for. No allowance shall be made for delay or suspension of the prosecution of the work due to fault of the contractor.
Failure to complete Work on Time. Should the contractor fail to complete the work within the time allowance mentioned in the proposal subject to the above modifications, the engineer will thereafter deduct from any moneys due or becoming due to the contractor an amount equal to the cost of maintaining the necessary force of engineers and inspectors during the additional time, together with an additional sum *Page 803 
of 10% per annum of the cost of the contractor, incomplete at the expiration of the time limit given in the contract, for the additional time required, and this amount shall be considered as reasonable liquidated damages due the State Highway Commission by the contractor for his failure to have finished the work within the specified time limits.
(68) Annulment of Contract. The contract, of which these specifications form a part, may be annulled by the State Highway Engineer for the following reasons: (1) Substantial evidence that the progress being made by the contractor is insufficient to complete the work within the specified time. (2) Failure on the part of the contractor to observe the requirements of these specifications. (3) Failure on the part of the contractor to properly make good any defects in materials or workmanship that may be pointed out by him by the engineer.
Before the contract is annulled the contractor and his surety will first be notified in writing by the State Highway Engineer of the conditions which make annulment of the contract imminent. Fifteen days after this notice is given, if no effective effort has been made by the contractor or his surety to correct the condition complained of, the State Highway Engineer may declare the contract annulled, and notify the contractor accordingly.
Upon receipt of a notice from the State Highway Engineer that the contract has been annulled, the contractor shall immediately discontinue all operations. The State Highway Engineer may then proceed with the work in any lawful manner that he may elect, until it if finally completed. When the work is thus finally completed, the total cost of the same will be connected. If this total cost is less than the contract price, the difference will be paid to the contractor. If the total is greater then the contract price, the difference shall be made up either by the contractor or his surety.
Mr. C. M. Upham was State Engineer at the time this controversy arose. Mr. J. C. Walker, the District Engineer for the Ninth District, where the project in question was located, made arrangements with Mr. Dicus and Wardrep about going on the work. From the whole record, it appears undisputed that Mr. Upham, the Highway Engineer, did not write a letter, issue a notice or give instructions to Mr. Walker or in any way sanction the acts or conduct or Walker or the Highway Commission in taking over the contract of the defendant Rand and making its performance by him impossible.
There were sixty-four assignments of error in addenda to record; two are withdrawn.
The other necessary facts and the material assignments of error will be considered in the opinion. *Page 804 
The contract between plaintiff and defendant, R. G. Rand, was to the effect that he was to complete project No. 940, approximately 7.13 miles, at the cost of approximately $80,380 of "gravel two course," a graded road with a surface of two courses of crushed stone from Waynesville, N.C. to Pigeon River in Haywood County, N.C. Rand's outfit was put on the Woodrow end of the job. The Commission to make monthly and final payments, unit prices. Other minor provisions not necessary to be considered. It was in evidence that the value of equipment with R. G. Rand had furnished on the job, was between $12,000 and $15,000. The construction of a contract, it is well settled, is a matter of law, and the meaning of the terms, if precise and explicit, is a question for the court. We think the contract entire, indivisible and not severable.
In Page on The Law of Contracts, part section 2083, p. 3606, it is said: "If a contract contains two or more covenants on either side, the question arises as to whether it is entire or severable. An entire contract is one the covenants of which have not been separated by the parties, and which accordingly cannot be separated by the court. It is also said to be a contract in which the parties intend that each covenant shall be connected with and related to every other covenant. It is also said to be a contract which is intended to accomplish a single object." And again, part section, 2088, at p. 3615-16: "A contract to furnish services at a certain price per unit, or to furnish goods at a certain price per unit, or to lease property at a certain amount per time unit, have each been held to be entire. The fact that separate items are entered for work and material in a contract for constructing or repairing and article, does not show that such contract is severable, if such items are inserted so as to show the adversary party how the total consideration was reached. The fact that provision is made for payment in installments does not of itself tend to show that the contract is severable, unless each installment is apportioned by the parties to a certain portion of the performance. A contract to work for a certain period of time at a specified salary is entire, although the salary is payable monthly." White v. Brown Son, 47 N.C. 403; Dula v. Cowles,ibid., p. 454; Thigpen v. Leigh, 93 N.C. 47; Tussey v. Owen 139 N.C. 457;Grocery Co. v. Bag Co., 142 N.C. 174; Steamboat Co. v.Transportation Co., 166 N.C. 582; McCurry v. Purgason, 170 N.C. 463;Hayman v. Davis, 182 N.C. 563; Smith v. Smith, 190 N.C. 764. *Page 805 
In Wooten v. Walters 110 N.C. at p. 254, it is said: "A contract is entire, and not severable, when by its terms, nature and purpose it contemplates and intends that each and all of its parts, material provisions and considerations, are common each to the other and interdependent. Such a contract possesses essential oneness in all material respects. The consideration of it is entire on both sides. Hence, where there is a contract to pay a gross sum of money for a certain definite consideration, it is entire, and not severable or apportionable in law or equity. Thus, where a particular thing is sold for a definite price, the contract is an entirely and the purchaser will be liable for the entire sum agreed to be paid. And so also, when two or more things are sold together for a gross sum, the contract is not severable. The seller is bound to deliver the whole of the things sold, and the buyer to pay the whole price, in the absence of fraud. Hence, it has been held that where a cow and four pounds of hay are sold for seventeen dollars the contract was entire. Mr.Justice Story says that `the principle upon which this rule is founded seems to be that as the contract is founded upon a consideration upon the entire performance thereof, if for any cause it be not wholly performed thecasus foederis does not arise, and the law will not make provision for exigencies against which the parties have neglected to fortify themselves.' Such contracts are enforceable only as a whole." McIntosh, Cases on Contracts, 609.
In Edwards v. Proctor, 173 N.C. at p. 43, it is said: "When parties enter into a contract for the performance of some act in the future, they impliedly promise that, in the meantime, neither will do anything to the harm or prejudice of the other inconsistent with the contractual relation they have assumed. The promisee, it also has been said (and this seems so to the better reason), has an inchoate right to the performance of the bargain, which becomes complete when the time for such performance has arrived, and, meanwhile, he has a right to have the contract kept open as a subsisting and effective one, as its unimpaired and unimpeached efficacy may be essential to his interests. Clark on Contracts (1904), p. 445; Frostv. Knight, L. R., 7 Exch., 111."
The general rule is that rescission will not be permitted for casual, slight or incidental breach of the contract, but only for such breaches as are material or substantial. It goes without saying that this depends largely on the terms and purposes of the contract and the circumstances surrounding the reason for the rescission. 9 C. J., Building and Constructing Contracts, sec. 60, p. 724-5; 13 C. J., Contracts, sec. 661, p. 613; Moss v. Knitting Mills, 190 N.C. 644.
In the present action, the evidence on the part of plaintiff tended to show that about two weeks after the contract was signed, defendant, R. G. Rand, started setting up equipment. The equipment was not *Page 806 
sufficient to complete the work in 150 days, the trucks were five-ton and too heavy. There were no enough men to operate the gravel-crushing plant nor teams and drivers to engage in common excavating. That he was urged to increase his force frequently by plaintiffs' resident engineer and the district engineer and to hurry up the work. That 75 of his working days had been consumed and approximately 15 to 20 per cent of the working covered by his contract had been performed. Plaintiffs' witness, George P. Holland, testified: "Mr. Rand built two miles of project 940." On cross-examination he said: "I think Wardrep went on the job about 10 November; he was also on a basis of costs of everything plus ten per cent. He worked three or four weeks, furnished teams and crew to do the rough grading ahead of Mr. Dicus, who was doing fine grading and surfacing on the Waynesville end of the job. Both Dicus and Wardrep had been put on the job by the State Highway Commission. At the time they were put on Mr. Ordway was in charge of Mr. Rand's crew, and Mr. Rand's crew was on the project at work, grading, getting out gravel and excavating under the terms of the contract. After these two men were placed on the Rand contract I think Mr. Rand continued to operate there six weeks."
On the other hand, the evidence on the part of R. G. Rand tended to show that he put $12,000 to $15,000 of equipment on the job; that he had made as great progress as any contractor could under the circumstances. He had put down something over two miles of the base course and completed one-half of the grading for the entire contract.
The State Highway Commission put Mr. Wardrep on the west end of the project on about 10 November, 1923, and Mr. Dicus on about 16 November, 1923. They were some three or four miles from where Rand's forces were at work. They placed a large force on that end. Rand was working on the east end of the project. Rand protested to the chairman of the plaintiff Commission, in letter 23 November, 1923: "My position, therefore, under my contract, is that this is an unwarranted interference." A copy of this letter was sent to defendant, Fidelity and Deposit Company of Maryland. In letter dated 17 December, 1923, to chairman State Highway Commission, he states: "I am in receipt of your letter of 27 November, 1923, and have taken a few days to reply, in order to give the matter careful consideration. My conclusion is as stated in my former correspondence to you that I have a valid contract for doing this work, and that I am making a legitimate profit under this contract and making fair progress under all the circumstances, and, if not interfered with, would continue to make a fair progress and would complete the work under the provisions of the contract." *Page 807 
In letter of ____ January, 1924, to chairman State Highway Commission he says: "I am in receipt of your letter of 2 January, in which you state that I have abandoned project 940, Haywood County, and that it has become necessary for you to cancel the contract, with the further statement that you are notifying the Fidelity and Deposit Company of Baltimore as to you action. This, you state, is in reply to my letter of 17 December. You have statement of my position with reference of this contract in my letter of 17 December. I have done nothing upon which you could base the inference, much less infer that I had abandoned my contract. On the contrary, I have not abandoned this contract, but I do say that in placing another contractor on this project you were guilty of breach of this contract, and I so notified you." Copy of this letter was sent to Fidelity and Deposit Company of Maryland.
R.G. Rand testified: " At this time I had plenty of equipment and I was ready and willing to complete the work." It was in evidence that he had about 45 men on the job. It was contended by defendants that the project was completed in the time limit under the terms of the contract of Mr. Wardrep and Mr. Dicus, contractors put on the west end of the job by plaintiff, Rand testifying at an increased cost of "35% to 55%, considering the new work that they added, that and the increase in amount of work according to the contract." Plaintiff claimed that on account of Rand's breach the additional cost was $63,510.51, and that after putting Mr. Dicus and Mr. Wardrep on the project, Rand worked on the project some six weeks and quit, and this was done without legal excuse, and that he abandoned the contract. The testimony is voluminous, but the above, we feel, is about the jist.
In Brady v. Oliver, 125 Tenn. 595, 147 S.W. 1135, 1140, 41 L.R.A. (N.S.), 60, 1913 C. Ann. Cas., 376, in speaking of a partly performed building contract which the builder obviously was not going to be able to finish at the agreed time, the Court said: "While it is clear that time is of the essence of this contract, and is a material part of it, we do not hold that the complainant can anticipate a failure to perform within the time at so remote a period from the time of the performance as in this case, and annul the contract, charging the defendant with a disability to perform it. Conceding for the purpose of the point, that it was impossible for the defendant to do the work within the time, this cannot be said to be a total disability to perform the contract, nor such a disability as that, if the contract is performed under it, it would be something other and different from the thing contemplated by the parties. Certainly the defendant was able to perform the contract by an extension of the time limit. There was no defalcation in the grade and quality of the work. The defendant was entitled to a pro tanto performance *Page 808 
for the full time limit, as long as he complied with the specifications of the contract in the performance, in order to reduce his liability for the breach. Had he failed to complete the contract within the time, he would be liable for such damages as complainant would have sustained because of the default, and likewise he was entitled to the benefit of all the money he could earn under it within the time. The complainant was not justified in doing anything that would increase the liability of the defendant, notwithstanding an immaterial breach. In all of the cases which we have seen, where the injured party has anticipated a breach and claimed a default justifying an abandonment of the contract, the disability to perform has been total, or the defendant has renounced the contract and refused to proceed under it. But those are quite different cases to this. The defendant not only had not refused to proceed under it, but was actively engaged in its performance. But merely because complainant had reason to believe that defendant would breach his contract, he was not justified in rescinding it in anticipation of the breach. In order to justify rescission, there must be actual default, unequivocal renunciation, or legal disability to perform." Williston on Contracts, vol. 2, sec. 875 (note), p. 1679. General Supply Const. Co. v. Goelet et al. (Court of Appeals of N. Y.), 148 N.E., p. 778, and cases cited.
The specifications were a part of the contract. Under definition of terms we find " `Engineer' — The State Highway Engineer of the State of North Carolina, duly authorized by the State Highway Commission, acting either directly or through authorized assistants, by whom all explanations and directions necessary for the satisfactory prosecution and completion of the work will be given. . . . `Annulment of Contract' — The contract, of which these specifications form a part, may be annulled by the State Highway Engineer for the following reasons: (1) Substantial evidence that the progress being made by the contractor is insufficient to complete the work within the specified time. (2) Failure on the part of the contractor to observe the requirements of these specification. (3) Failure on the part of the contractor to properly make good any defects in materials or workmanship that may be pointed out to him by the engineer. Before thecontract is annulled the contractor and his surety will first be notifiedin writing by the State Highway Engineer of the conditions which makeannulment of the contract imminent. Fifteen days after this notice is given, if no effective effort has been made by the contractor or his surety to correct the condition complained of, the State Highway Engineer may declare the contract annulled, and notify the contractor accordingly."
It is contended by plaintiff that the district engineer had the power to annul — authorized assistant — but the assistant's power is limited to *Page 809 "all explanations and directions necessary for the satisfactory prosecutionand completion of the work will be given". No power to annul is given him. Then again, this must be read in connection with annulment provisions. The contract was made between the plaintiff and defendants. The higher power made the contract — the contract provision was that the State Highway Engineer, a higher power, upon written notice could annul it for causes mentioned, not a subordinate — "Notice is due process." This annulment provision by the higher power was for the protection of all parties. This annulment must be gone by the State Highway Engineer. But in the present case, District Engineer J. C. Walker gave no notice, as required, nor did the State Highway Engineer. The record discloses that this was never done by either. The written notice was never given to R. G. Rand or the Surety Company, as required by the contract, by the State Highway Engineer, nor did he annul the contract according to its terms.
Mr. Justice Connor, in Ingram v. Bank, ante, at p. 359, says: "The principle stated in Edgerton v. Taylor, 184 N.C. 571, is applicable upon the facts of the instant case. It is said in the opinion in that case: `Sureties are favored by the law. Their obligations are ordinarily assumed without pecuniary compensation, and are not to be extended by implication or construction. They have a right, as we have said, to stand on the terms of their contract, and having consented to be bound to a certain extend only, their liability must be found within the terms of that consent, strictly construed, and it has been said to be insufficient that the surety may sustain no injury by a change in the contract, or that it may even be for his benefit.'" Roper Lumber Co. v. Lawson, post 840.
In Page on the Law of Contracts, sec. 2609, p. 4583, it is said: "If a contract provides for notice, either by its express terms or by necessary implication, and either as a condition precedent to the duty of the party to whom notice is to be given to perform, or as a condition subsequent to terminating rights under the contract, full effect is given to such provision, and as a substantial compliance therewith is necessary."
In United States v. O'Brien 220 U.S., at p. 327, it is said: "The sole material express promise of the contractors was to complete the work by 1 July, 1902. If the work was done at that date that promise was performed, no matter how irregularly or within what delays in the earlier months. Under this terms the United States was not concerned with the stages of performance, but only with the completed result. See Bacon v. Parker,137 Mass. 309, 311. Its interest in the result, however, made it reasonable to reserve the right to employ some one else if, when time enough had gone by to show what was likely to happen, it saw that it probably would not get what it bargained for from the present *Page 810 
hands. But it would be a very severe construction of the contract, a contract, too, framed by the United States, to read the reservation of a right to annul, for want of a diligence not otherwise promised, as importing a promise to use such diligence as should satisfy the judgment of the engineer in charge. It is one thing to make the right to continue work under the contract depend upon his approval, another to make his dissatisfaction with progress conclusive of a breach. In this case it was admitted that there was time enough left to finish the work under the contract when the defendants were turned off. It would be a very harsh measure to pronounce the contract broken when but for the prohibition of the United States the defendants might have done the work in time."Cincinnati N. O. T. P. Railway Co. v. Fidelity Deposit Co. of Md., 296 Fed., p. 298. On notice — see Rodemer v. Hazlehurst Co., 9 Gill (Md.), p. 288; Georgia R. B. Co. v. Hass, 127 Ga., p. 187.
In Cincinnati N. O. T. P. Ry. Co. v. Fidelity Co., supra, under a contract for the construction of a railway track compliance with the requirement that railway chief engineer of construction certify to the railway that the contract was not progressing satisfactorily and that contractor was in default, held a condition precedent to railway's exercise of the right to take over and complete the contract on contractor's account.
The defendants prayed the court to give the following instruction: "If the jury shall find from the evidence that the plaintiff failed to give to the defendants, through the State Highway Engineer the written notices required by section No. 68 of the printed contract, and shall further find that without having given such written notices and plaintiff entered upon the construction of the road in question by placing thereon hands and equipment without the consent of the defendants, then the court charges you that such acts and conduct on the part of the plaintiff would be a wrongful interference with the defendants' right under said contract, and would constitute a breach of the contract by the plaintiff, and it would, therefore, be your duty to answer the fourth and fifth issues `Yes.' "
The refusal to give his instruction, under the facts and circumstances of this case, we think, was error, and defendants entitled to a new trial. A provision in a contract may be waived. Page on the Law of Contracts, sec. 2664, p. 4687.
Brogden, J. in Bixler v. Britton, 192 N.C. at p. 201, says: "A written contract may be abandoned or relinquished: (1) By agreement between the parties; (2) by conduct clearly indicating such purpose; (3) by the substitution of a new contract inconsistent with the existing contract.Redding v. Vogt, 140 N.C. 562; Lipschutz v. Weatherly, 140 N.C. 365;Public Utilities Co. v. Bessemer City, 173 N.C. 482; *Page 811 Faust v. Rohr, 167 N.C. 360." May v. Getty, 140 N.C. 310; Palmer v.Lowder, 167 N.C. 331.
In Aiken v. Insurance Co., 173 N.C. at p. 403, it is said: "It is true, as asserted by counsel, that what amounts to abandonment is a question of law, just as what is negligence is a question of law; but whether there was an abandonment, or whether there was negligence, in any particular case is a mixed question of law and fact, the judge declaring what is the law and the jury finding what are the facts and applying the law to them."
Mr. Justice Holmes, in Porto Rico v. Title guaranty S. Co., 227 U.S. at p. 382, closes his opinion with these words: "If, within the time allowed for performance, the plaintiff made performance impossible, it is unimaginable that any civilized system of law would allow it to recover upon the bond for a failure to perform."
We have not considered the other assignments of error: they may not arise on another trial.
For the reasons given there must be a
New trial.