REDDING v. VOGT.

(Filed March 20, 1906).

*Dower—Seizin of Husband—Reversions and Remainders—Contracts—Rescission—Novation—Deeds—Reservation to a Stranger—Possession.*

1. The right to dower does not attach to the lands of the husband unless he was seized during the coverture, and the husband must have an estate of inheritance.

2. Dower is not allowed in estates in reversion or remainder expectant upon an estate of freehold; and hence, if the estate of the husband be subject to an outstanding freehold estate, which remains undetermined during the coverture, no right of dower attaches.

3. When the parties to a contract come to a fresh agreement of such a kind that the two cannot stand together, the effect of the second agreement is to rescind the first.

4. Where, by the first contract to convey, a party acquired absolutely the entire estate in one-half of a tract of land, and by the second contract he was given one-half interest subject to a life estate in that tract and other land, and took a deed in execution of the last contract, and thereupon entered into possession of the land and conveyed a part of it, the last contract and deed must be regarded as a substitute for the first contract and as a rescission of it, the two transactions being wholly irreconcilable, and those claiming under him must abide by its terms.

5. While a reservation will not give title to a stranger, it may oper-
ate, when so intended by the parties, as an exception from the
thing granted, and as notice to the grantee of an adverse claim to
the thing excepted or reserved.

6. The actual possession of land does not in itself constitute seizin.

SPECIAL proceeding by Lillian Redding against Lucy R.
Vogt and others, for dower, heard upon issues joined, by
*Judge E. B. Jones* and a jury, at the Fall Term, 1905, of
the Superior Court of PAMLICO. From a judgment for the
plaintiff, the defendants appealed.

The plaintiff brought the proceeding for the purpose of
having her dower assigned in the lands described in her peti-
tion. The evidence disclosed the following facts: 1. On
February 17, 1890, John P. Redding and his wife, Elizabeth
Redding, executed a deed to Lizzie C. Redding (now Lizzie
C. Brown), their daughter, for two tracts of land therein
described. This deed was recorded in Book 17, page 234.
2. Lizzie C. Redding, October 3, 1898, agreed in writing to
convey to her brother, S. A. Redding, one-half of the land
described in the deed first mentioned, reciting in the agree-
ment that the land had been conveyed to her by her parents
with the understanding that she would convey to S. A. Red-
ding one-half thereof. 3. On June 5, 1899, John P. Red-
ding and wife executed another deed to Lizzie C. Redding
(now Lizzie C. Brown) for the land described in the first
deed as well as for other tracts. This deed contained in the
premises the following clause: "Reserving always to the
parties of the first part an estate in the said lands for the
terms of their natural lives," and in the *habendum* the fol-
lowing: "Excepting and reserving always unto themselves, the
said John P. Redding and Elizabeth Redding, an estate for
the term of each of their natural lives in and to all the lands
hereby conveyed, and it is expressly agreed and understood
that none of the property hereby conveyed or herein men-

tioned shall pass from the possession of the said first parties during their natural lives, and the said parties of the first part covenant to and with the said party of the second part that they are seized of said lands in fee and have a right to convey the remainder in the same, and that they will warrant and defend the title to the same against all lawful claims." 4. On the same day (June 5, 1899,) Lizzie C. Redding agreed in writing to convey to S. A. Redding a one-half interest in the land described in the second of the said deeds to her, reciting the fact that in the deed last mentioned John P. Redding and wife, who had conveyed the land to her, had reserved a life estate in all the tracts to themselves. 5. On November 18, 1901, Lizzie C. Brown (formerly Lizzie C. Redding) and her husband, E. A. Brown, joined in a deed to S. A. Redding for a part of each body of the land conveyed in the two deeds from John P. Redding and wife to Lizzie C. Redding. The deed just after the description of the land contained this clause: "Excepting always a life estate in and to the said lands for the natural life of Mrs. Elizabeth Redding." Her husband had died in the meantime. 6. S. A. Redding and wife, Lillian Redding, the plaintiff (who were married on January 8, 1902), without the joinder of Mrs. Elizabeth Redding, conveyed seventy-six acres of the said land to one Thomas A. Hadder by deed dated March 29, 1902.

S. A. Redding took possession of the land conveyed to him by E. A. Brown and wife immediately and continued in possession, treating it as his own, until his death, which occurred September 29, 1902, it being the land in controversy.

The defendants' counsel requested the court to charge the jury that if they believed the evidence, the plaintiff was not entitled to dower in the said land, and that they should therefore answer the issues in favor of the defendants. This instruction the court refused to give, but charged the jury that, if they believed the evidence, they should find that S. A.

Redding died seized and possessed of the said land and answer the issues in favor of the plaintiff. Defendants excepted. The issues, with the answers of the jury thereto, are as follows: "1. Did Shade A. Redding, husband of *feme* plaintiff, die seized and possessed of the lands in controversy? Ans. Yes; 2. If so, what part of said lands? Ans. That part of the land conveyed in the deed of J. P. Redding and wife, Lizzie C. Redding, dated February 17, 1890, and recorded in Book 17, p. 234, which is included in a deed from Lizzie C. Brown and husband to S. A. Redding, dated November 18, 1901, and registered in Book 32, p. 120."

The court adjudged upon the verdict that the plaintiff was entitled to have dower allotted in that part of the land described in the deed of John P. Redding and wife to Lizzie C. Redding, dated February 17, 1890, which was conveyed by the deed of E. A. Brown and wife, Lizzie C., to S. A. Redding, and process for that purpose was directed to be issued by the clerk. Defendants excepted and appealed.

*D. L. Ward* for the plaintiff.
*H. L. Gibbs* and *Simmons & Ward* for the defendants.

WALKER, J., after stating the case: The plaintiff seeks to have dower allotted in the lands described in her petition, and her right to the relief depends upon the construction and legal effect of the contracts and deeds mentioned in the statement of the case. It is provided by statute that a widow shall be endowed as at common law and shall be entitled to an estate for her life to the extent of one-third in value of all the lands, tenements and hereditaments whereof her husband was seized and possessed at any time during the coverture and to the same estate in all legal rights of redemption and equities of redemption or other equitable estates in lands, etc., of which her husband was likewise seized in fee at any time during the coverture, subject to valid incumbrances existing before, or

with her free consent created during, the coverture. Revisal, sections 3083 and 3084. The right to dower, therefore, does not attach to the lands of the husband unless he was seized during the coverture, and the husband must have had an estate of inheritance. *Houston v. Smith,* 88 N. C., 312. The word "seizin" is said to have a technical meaning when used in this connection and at common law it imported a feudal investiture of title by actual possession and with us it has the force of possession under some title or right to hold the same. It is either a seizin in deed or a seizin in law; the former being the actual possession of a freehold estate and the latter the right to the immediate possession or enjoyment of a free-hold estate. Seizin applies only to freehold estates or to the possession of land of a freehold tenure. Seizin in fact or in deed has also been defined to be possession with intent on the part of him who holds it to claim a freehold interest and seizin in law as the right of immediate possession according to the nature of the estate. Washburn on Real Property, 33 and 34; *Early v. Early,* 134 N. C., 258; *Houston v. Smith, supra.* A somewhat different and broader meaning is assigned to the word "seizin" in our statutes of descent, where it is provided that every person, in whom a seizin is required by any of the rules of descent, shall be deemed to have been seized, if he may have had any right, title or interest in the inheritance. Revisal, sec. 1556, Rule 12; *Early v. Early, supra.* "To give a right of dower, the estate of the husband must confer a right to the immediate freehold. This is an essential requisite at the common law. Dower is not allowed in estates in reversion or remainder ex-pectant upon an estate of freehold; and hence, if the estate of the husband be subject to an outstanding freehold estate, which remains undetermined during the coverture, no right of dower attaches." *Houston v. Smith,* 88 N. C., 312, and 1 Scribner on Dower, 217. Under this settled rule of the law, the defendants contended that the plaintiff is not entitled to

dower in the lands in question, because there is an outstanding freehold estate in Mrs. Redding by virtue of the deed of J. P. Redding and wife to Lizzie C. Redding, dated June 5, 1899, the contract between Lizzie C. Redding and S. A. Redding, dated June 5, 1899, and the deed of E. A. Brown and wife (formerly Lizzie C. Redding) to S. A. Redding, dated November 18, 1901. The plaintiff on the other hand insists that she is entitled to dower for either of two reasons: first, because by the agreement between Lizzie C. Redding and S. A. Redding, dated October 3, 1898, the latter acquired an equitable estate in fee in so much of the land as is described in that agreement and that as, under our statute, a widow is now dowable in an equitable estate, contrary to the rule of the common law (*Fortune v. Watkins,* 94 N. C., 314,) she is now entitled to have her dower set apart in those lands and, second, because the reservation of the life estate in the agreement of June 5, 1899, and the deed of November 18, 1901, is to persons who were strangers to the contract and deed and therefore void. In this conflict of views, as to the law of the case, our opinion is with the defendants. If the contract of October 3, 1898, had not been followed by that of June 5, 1899, and by the deed of the same date made in execution of it, there would be force in the plaintiff's contention, but it is apparent to us that the latter contract and deed were made as substitutes for the contract of Ocober 3, 1898, and that, by the transactions between them, the parties clearly intended to rescind that contract and to give full force and effect to the latter contract and the deed made under it. That parties may rescind a contract, either expressly or by substituting another in its place which is so inconsistent with it that the two cannot well co-exist and operate at one and the same time, cannot be doubted. Rights acquired under a contract may be abandoned or relinquished either by agreement, or by conduct clearly indicating such a purpose. *Falls v. Carpenter,* 21 N. C., 237; *Faw v. Whittington,* 72 N. C., 321;

*Miller v. Pierce,* 104 N. C., 389; *Holden v. Purefoy,* 108
N. C., 163; *Taylor v. Taylor,* 112 N. C., 27; *Gorrell v. Als-
paugh,* 120 N. C., at p. 368; *May v. Getty,* 140 N. C., 310.
*Lipschutz v: Weatherly,* at this. term.   A contract may be dis-
charged by the substitution of a new contract, and this re-
sults: (1) Where a new contract is expressly substituted for
the old one; (2) where a new contract is inconsistent with the
old one; (3) where new terms are agreed upon, in which
case a new contract is formed, consisting of the new terms
and of the terms of the old contract which are consistent
with them, and (4) where a new party is substituted for one
of the original parties by agreement of all three.   Clark on
Contracts, p. 610, sec. 260.   The authorities are numerous to
the same effect.  It was held in *Choceco Bank v. Perry,* 52
Me., 293, that where parties make two contracts upon the
same subject matter, which cannot be reconciled without re-
jecting some of the material stipulations in the one or the
other or both, the court will not enter upon this work of expur-
gation, but will endeavor to give effect to the one contract or
the other, as the intention of the parties shall seem to require.
Substantially the same ruling was made in *Snow v. Russell,*
36 Ill., 185; *Chrismen v. Hodges,* 75 Mo., 413.   The prin-
ciple is thus stated in *Harrison v. Polar Star Lodge,* 116 Ill.,
287: "When the parties to a contract come to a fresh agree-
ment of such a kind that the two cannot stand together, the
effect of the second agreement is to rescind the first.   This is
one form of *novatio* in the Roman Law.   When an agreement
is thus rescinded by novation, the contract in existence prior
to the novation loses its individuality, and becomes merged
in the new contract.   Any circumstances or course of conduct
from whence can be clearly deduced an agreement to put an
end to the original contract, will amount to a rescission of
it."   Fry on Specific Performance (3 Am. Ed.), sections 998,
1009, *et seq.*   In *Patmore v. Colburn,* 1 C. M. & R. (Exch.),
65, *Lord Lyndhurst* said that, when the provisions of two con-

tracts are inconsistent and the second cannot be operative if the first is still in existence, the first is no longer a subsisting agreement. *Hart v. Lauman,* 29 Barbour, 410 ; *Paul v. Mes-ervey,* 58 Md., 419. Many other decisions of the same import might be cited. If, upon the facts of our case, therefore, we can gather that the parties intended the two contracts not to co-exist, and the second was designed to take the place of the first, the former must be taken to embody the entire and final agreement of the parties. *Mather v. Butler County,* 28 Iowa, 253. By their first deed John P. Redding and wife conveyed to Lizzie C. Redding the land, one-half of which she subsequently agreed to convey to her brother, S. A. Redding. After the making of this agreement, and on the 5th day of June, 1899, John P. Redding and wife conveyed to Lizzie C. Redding, not only the land embraced by their first deed to her, but another large body of land excepting and reserving a life estate to themselves in all the lands and thereafter, on the same day, Lizzie C. Redding agreed to convey to S. A. Redding one-half of the lands which she acquired by the last deed from her parents, reciting in the contract that, by the deed she had received, a life estate was reserved to John P. Redding and his wife. Afterwards, and in performance of this agreement, Lizzie C. Brown (formerly Redding) and her husband conveyed to S. A. Redding certain tracts of land and interests in other tracts, all of which consisted of portions both of the land described in the first deed of John P. Redding and wife to Lizzie C. Redding and of the additional land conveyed by their second deed, except-ing and reserving a life estate to Elizabeth Redding, then the widow of John P. Redding, who had died. S. A. Redding took possession of the lands so conveyed to him by Mrs. Brown, claiming them as his own, and actually sold and con-veyed 76 acres of the same to one Thomas A. Hadder. It does not seem to us that a stronger case of an election, on the part of S. A. Redding, to take under the second contract and

the deed made in pursuance thereof could be presented. It was impossible for the first and second transactions to stand together. By the first contract, S. A. Redding acquired absolutely the entire interest and estate in one-half of the land, according to the very terms of the instrument, and by the second he was given only a remainder in one-half of that and other land, that is, a one-half interest therein subject to the life estate. His acceptance of the last contract is conclusively established by his taking the deed from his sister and thereupon entering into possession of the land and conveying a part of it to another. The first and second contracts could not, therefore, stand together, because the two estates conveyed are radically different, one being the entire fee, and the other only a remainder. If he claimed under the first contract, he must necessarily have rejected the second, and if he claimed under the second contract and the deed made in fulfillment of it, he must just as surely have rejected the first contract. He acquired additional land under the second contract and the deed, which he could not in good conscience keep and at the same time repudiate the provisions of the deed by virtue of which he asserted his right to it. If he had claimed under the first contract, the life estate excepted in the second contract and the deed to him would necessarily fail. When he claimed under the second contract and the deed, he thereby as fully recognized the existence of the life estate as if he had expressly done so by an instrument in due form of law, and those claiming under him will not be allowed to assert a right or title totally inconsistent with his deliberate choice so clearly manifested and in contravention of the just rights of others who must be held to have acquired interests, by virtue of his election, which induced them to part with their land upon the faith of the rectitude of his conduct. The last contract and the deed made to S. A. Redding must be regarded as a substitute for the first contract and as a rescission of it, the two transactions being

REDDING v. VOGT.

wholly irreconcilable. We do not leave out of consideration the second deed from John P. Redding and wife to Lizzie C. Redding, as that must be treated as a part of the transaction by which the first contract was rescinded. Lizzie C. Redding could not have made the second contract and the deed in execution of it, so as to convey to S. A. Redding the additional land described in the second deed of John P. Redding and wife, if she had not received that deed, and he was as much bound by the provisions of the deed as by those of the subsequent contract between Lizzie C. Redding and himself and the deed by her and her husband to him. He derived his title to the additional land under the second deed of John P. Redding and wife to his sister, and those claiming under him must abide by its terms. He having deliberately taken benefit under it, they will not now be heard to say that he did not intend to rescind the first contract and substitute the second one and the deed to him in its place. All this occurred before the plaintiff and S. A. Redding were married, and at no time, therefore, during the coverture has he had any equitable interest or estate in the land under the first contract.

Having come to this conclusion, the remaining question will not be difficult of solution. It is undoubtedly true that a reservation cannot be made to a stranger. We find the principle stated in Warvelle on Vendors, p. 474, as follows: "It is a rule that a reservation must be to the grantor and not to a stranger, but while a reservation will not give title to a stranger, it may operate, when so intended by the parties, as an exception from the thing granted, and as notice to the grantee of adverse claims as to the thing excepted or 're-served.' It must not be understood, however, that the exception in such case gives title to such third person, for no one not a party to the deed can acquire any rights or interests in the land by virtue of any exception therein contained more than by a reservation; yet, where third parties already possess rights adverse to those conveyed, an exception may properly

be made for the purpose of relieving the grantor from liability on his covenants. The exception, in such event, operates as a recognition of the existing rights of third persons, and serves to convey notice to the grantee." Hopkins on Real Property, 418. It is familiar learning that a reservation *(reddendum)* is a clause in a deed, whereby the grantor reserves some new thing to himself issuing out of the thing granted and not *in esse* before, while an exception is always of a part of the thing granted or out of the general words and description in the grant. Being ever a part of the thing granted, it takes something out of the grant which would otherwise pass thereby. 4 Kent Com., 468; Sheppard's Touchstone, 77, *et seq.; Wall v. Wall,* 126 N. C., 405; Hopkins on Real Property, *supra.* Whether the clause in the deed to S. A. Redding, which is in the form of an exception, can operate as such under the principle stated in Warvelle on Vendors, it is not necessary to say, as it follows from what we have already decided that the second deed of John P. Redding and his wife to Lizzie C. Redding must be construed with the second contract and the deed to S. A. Redding as one transaction and as intended to supersede the first contract, and that being so, the reservation by John P. Redding and wife to themselves in their second deed of a life estate is valid and effectual and prevented the vesting of an immediate estate of freehold in S. A. Redding, he having taken under a contract and deed which expressly recognizes the existence of the life estate in John P. Redding and his wife, which was created by that second deed. The mere fact that he was bound by the provisions of that deed, deprived him of any claim to a present estate of freehold. It follows that the plaintiff cannot have dower for want of the seizin of her husband, for the right of dower, as we have said, can attach only when the husband has the immediate estate of freehold as well as the inheritance, and here the tenant for life was living at the death of the husband, and at no time during the coverture

could the latter have had the requisite seizin.  *Weir v. Humphries,* 39 N. C., 264.

We do not know upon what ground His Honor placed his decision.  There was evidence that S. A. Redding had actual possession of the land, but this fact, while it tends to show that he accepted and treated the second contract and deed as a rescission of the first contract, did not in itself constitute seizin, for the bare possession of land is not seizin.  *Barnes v. Raper,* 90 N. C., 189; *Efland v. Efland,* 96 N. C., 488.

Upon the consideration of the whole case, we conclude that S. A. Redding had no equitable estate in the land under the first contract, at the time of his death, and no seizin sufficient to support the plaintiff's claim of dower.

There was error in the charge given by the court and the case must again be submitted to a jury with proper instructions as to the legal effect of the facts, disclosed by the evidence, in determining the rights of the parties.

New Trial.