459 P.2d 712

Dorothy Agnes BRADY, Executrix of the Estate of Charles Anderson Brady, Deceased, and Dorothy Agnes Brady, Appellant,

v.

BLACK MOUNTAIN INVESTMENT CO., an Arizona corporation, Appellee.

BLACK MOUNTAIN INVESTMENT CO., an Arizona corporation, Cross-Appellant,

v.

Dorothy Agnes BRADY, Executrix of the Estate of Charles Anderson Brady, Deceased, and Dorothy Agnes Brady, Cross-Appellee.

No. 9671.

Supreme Court of Arizona.

In Division.

Oct. 15, 1969.

Evans, Kitchel & Jenckes, by Joseph H. Worischeck, Phoenix, for appellant and cross-appellee, Brady.

McLane & McLane, by William Lee McLane, Phoenix, for appellee and cross-appellant Black Mountain Investment Co.

STRUCKMEYER, Justice.

This lawsuit was brought by Black Mountain Investment Co., an Arizona corporation, against Dorothy Agnes Brady personally and as executrix of her husband's estate and against Transamerica Title Insurance Company to compel the delivery of a deed to a 10 acre parcel of real property. Summary judgment in favor of Black Mountain was granted in the court below. Mrs. Brady has appealed and Black Mountain has cross-appealed. Transamerica Title Insurance Company although named by Black Mountain as a cross-appellee has not made an appearance in this court.

In April of 1959, Charles Anderson Brady and Dorothy A. Brady, his wife, as sellers, entered into a written contract with John J. Schwartz for the sale of 160 acres of land for $91,200.00. A total of $24,000.00 was paid on or prior to the close of escrow. Thereafter, the Bradys and Black Mountain Investment Co., an Arizona corporation, together with the Phoenix Title and Trust Company, an Arizona corporation, now the Transamerica Title Insurance Company of Arizona, an Arizona corporation, as trustee, entered into a trust agreement by which Black Mountain purchased from the Bradys the same 160 acres for the same purchase price. The title to the property was to be held in trust by Phoenix Title and Trust Company until performance by Black Mountain. Receipt of "$24,000.00 cash paid" was acknowledged by the Bradys, leaving the principal sum of $67,-200.00 remaining to be paid in fifteen annual installments of $4,480.00. Black Mountain made six annual payments and defaulted on the seventh installment due May 7, 1966.

The trust agreement provided for the release of title to 10 acre parcels to Black Mountain when not in default. On April 30, 1966, one week before default, Black Mountain demanded of Transamerica Title Insurance Company that it release 80 acres of the 160 acres and Transamerica did release 80 acres on May 2. On May 5 Black Mountain made a further written demand that Transamerica release an additional 10 acres of land and tendered a check for $445.20. This demand was refused and Black Mountain brought suit to compel the conveyance, obtaining the judgment which is here under attack.

The parts of the trust agreement material to this action read:

"* * * the Second Beneficiaries (Black Mountain) when not in default hereunder, may obtain the release of parcels of the above described property upon the payment to the Trustee for the account of First Beneficiaries (Bradys) of the sum of $5,700.00 per gross 10 acres. * * * All release price payments shall be cumulative and shall apply towards succeeding payments to become due under the agreement to purchase and all principal payments shall apply toward the release of parcels. It is further understood and agreed that the Second Beneficiaries shall be entitled to the release of 40 acres in consideration of the cash payment made at the inception of the trust. * * *"

It is the Bradys' contention that the trust agreement by the language "It is understood and agreed that (Black Mountain) shall be entitled to the release of 40 acres in consideration of the cash payment made at the inception of the trust" is clear and positive as to the effect to be given to the $24,000.00 "cash payment" and no more than 40 acres can be released thereby. If the Bradys' contention is correct, only 80 acres can be released, calculated in this manner: $24,-000.00 releases 40 acres—the equivalent of four 10 acre parcels. Six annual payments at $4,480.00 totals $26,880.00 which, when

divided by $5,700.00, the amount necessary to release each 10 acre parcel, is sufficient to release four 10 acre parcels with a credit balance of $4,080.00 towards the release of the ninth parcel; that the tender of $445.20 on May 5th, 1966, could at the most bring Black Mountain's credit balance toward the release of the ninth parcel to $4,525.20, a sum which is not sufficient to release the ninth parcel.

The trial court adopted Black Mountain's theory as expressed in its complaint, thereby impliedly construing the language, "all principal payments shall apply towards the release of parcels" as meaning that the $24,000.00 paid by Schwartz prior to the execution of the trust agreement was a "principal payment" which could be applied to parcel releases at the rate of $5,700.00 per parcel. As so construed, its calculation was: 40 acres is the equivalent of four 10 acre parcels which at the release price of $5,700.00 is $22,800.00; therefore, Black Mountain had a credit of $1,200.00 left over from the cash payment of $24,000.00. This $1,200.00 as part of a "principal payment" can be applied toward the release of another parcel. The $1,200.00 when added to the $445.20 tendered and to the six annual payments totaling $26,800.00 is $28,525.20, an amount sufficient to release the ninth parcel on the basis of $5,700.00 a parcel.

We note at this point that both parties moved for judgment in the court below and did not then nor do they here claim that there are any disputed facts. Consequently, the issues can be concluded simply by the application of the appropriate rules of law governing the interpretation of contracts.

We think the court below erred in its construction of the trust agreement. Assuming, as Black Mountain contends, that the words "all principal payments in the clause "all principal payments shall apply towards the release of parcels" include the $24,000.00 cash payment by Schwartz, there is thereby created an incompatibility with the next succeeding sentence providing that Black Mountain "shall be entitled to the release of 40 acres in consideration of the cash payment." An incompatibility arises because "40 acres" is explicit, entitling Black Mountain by the cash payment to the release of that amount of land, neither more nor less; whereas, the $24,000.00 as a payment on the principal indebtedness if applied towards the release of parcels, will effect the release of four parcels with a carry over credit of $1,200.00 to be applied towards the release of an additional parcel.

The rule of law has been repeatedly enunciated by this court that where there are inconsistent provisions in a contract, one general and the other specific, the specific provision qualifies the meaning of the general provision and controls over the general. Marshall v. Patzman, 81 Ariz. 367, 306 P.2d 287; Central Housing Investment Corp. v. Federal National Mortgage Assoc., 74 Ariz. 308, 248 P.2d 866; Tyson v. Tyson, 61 Ariz. 329, 149 P.2d 674; DeMund v. Oro Grande Consolidated Mines, 56 Ariz. 458, 108 P.2d 770. Here, under Black Mountain's construction, the clause "all principal payments shall apply towards the release of parcels" is general in its application, being directed to the entire $91,200.00 purchase price. The clause which permits the release of "40 acres in consideration of the cash payment" deals with a specific portion of the payment on the principal indebtedness, declaring with particularity what effect is to be given to the cash payment of $24,000.00. Thus, the latter being specific controls over the former.

However, we do not think that there is, in fact, any inconsistency in the language of the trust agreement. The controlling rule of interpretation requires that the ordinary meaning of language be given to words where circumstances do not show a different meaning applicable. Restatement of the Law, Contracts § 235 [A]. If the plain language of the clause providing that Black Mountain "shall be entitled to the release of 40 acres in consideration of the cash payment" is taken to mean exactly what it says, Black Mountain is entitled to the release of only 40 acres.

The strict letter of the language "all principal payments shall apply towards the release of parcels" is fully satisfied and exhausted because the cash payment has been applied toward the release of parcels.

Black Mountain when it moved for summary judgment in the court below also submitted a copy of the original purchase contract between the Bradys and John J. Schwartz. It is urged that the terms of this purchase contract shed light on the meaning to be attached to the language used in the trust agreement. The Parole Evidence Rule does not, of course, exclude the court's consideration of the purchase contract if it is used to assist in the interpretation and give meaning to the language of the trust agreement and not to vary or contradict its meaning. 3 Corbin on Contracts, § 543 p. 130.

The purchase contract when examined with this thought in mind discloses provisions for acreage release in this language:

"ACREAGE RELEASE PROVISIONS

All funds paid towards the purchase price will apply toward the release of acreage. At close of escrow a forty acre parcel will be released at the selection of buyer. Each time after the close of escrow that the principal balance is reduced in the amount of $5,400.00, a ten acre parcel will be released at the selection of the buyer, * * *."

Apparently at the time of execution of both contracts none of the parties contemplated the possibility of the conflict which has ensued for the legal conclusion at which we arrived is equally applicable to the purchase contract. Under the purchase contract all funds paid towards the purchase price were to be applied toward the release of acreage. But here again, the release of acreage at close of escrow was specifically limited to the release of 40 acres. (The $24,000.00 had been paid prior to the close of escrow.) Moreover, *after the close of escrow* only a reduction in the principal balance by $5,400.00 per-

mitted the release of an additional 10 acre parcel.

Black Mountain attempts to use the purchase contract and the figure of $5,400.00 for that of $5,700.00 in the trust agreement to effect parcel releases. We think it sufficient to say that the transposition of the figures in this fashion is an obvious violation of the Parole Evidence Rule, since it varies the terms of the trust agreement.

Black Mountain, however, urges that the purchase contract is the controlling agreement between the parties on the premise that where a subsequent agreement is between parties different from those to the original contract, the former will not be considered as rescinded. The governing rule, however, was early stated by this court in Arizona-Parral Mining Co. v. Forbes, 16 Ariz. 395, 146 P. 504:

"'A contract will be considered as having been rescinded by the substitution of another and subsequent contract relating to the same subject-matter, where it appears to have been the intention of the parties, that the later contract should supersede the first one. * * * Where the entire subject-matter is covered, and there is nothing on the face of the second agreement to show that it is intended to be supplemental to the original agreement, it supersedes and rescinds the original, not as a question of intention, but by operation of law, as a result of steps taken by the parties. * * *'"

The purchase contract expressly contemplated the substitution of a nominee or an Arizona corporation for Schwartz. Moreover, Schwartz signed the trust agreement as president of Black Mountain Investment Co. Likewise, the entire subject matter of the purchase contract is covered by the trust agreement and there is nothing on its face or in the record which indicates an intention that it be supplemental to the purchase contract.

Finally and obviously, the trust agreement confers both additional benefits and detriments by placing title in Transamerica, the trustee, it being directed to act in such

a manner as to protect both parties' interests. Plainly, the trust agreement superseded the purchase contract.

Judgment is reversed with directions to enter a judgment in favor of Dorothy A. Brady individually and as executrix.

LOCKWOOD, V. C. J., and HAYS, J., concur.