761 P.2d 733

**FLOORING SYSTEMS, INC., an Arizona corporation, Plaintiff/Appellant,**

v.

**RADISSON GROUP, INC., a foreign corporation; CSA, Inc., a foreign corporation, Defendants/Appellees.**

**No. 2 CA–CV 88–0022.**

Court of Appeals of Arizona, Division 2, Department A.

March 24, 1988.

Petition for Review Granted in Part Oct. 12, 1988.*

* Gordon, C.J., of the Supreme Court, did not     participate in the determination of this matter.

**112**

Tower, Byrne & Beaugureau, P.C. by
David L. Beaugureau and Amy Schwartz,
Phoenix, for plaintiff/appellant.

Snell & Wilmer by James J. Sienicki and
David W. Counce, Phoenix, for defend-
ants/appellees.

## OPINION

HATHAWAY, Judge.

This is an appeal from the granting of a
summary judgment involving a contract
dispute between the defendants/appellees
(Radisson and CSA), and the plaintiff/ap-
pellant (Flooring). We find no genuine is-
sues of material fact and affirm the deci-
sion of the trial court.

## FACTS

The parties are involved in a dispute re-
garding payment for carpeting installed by
Flooring in a remodeling project at the
Radisson Resort Hotel in Scottsdale, Arizo-
na. CSA, the project designer, sent invita-
tions to bid to subcontractors, including
Flooring, and to general contractors, in-
cluding Five Star.

After submitting a bid, Flooring was se-
lected to do the carpet installation. After
Flooring began work, Five Star was em-
ployed as the general contractor and exe-
cuted a contract with CSA. Under the
contract, CSA, as Radisson's agent, was to
pay Five Star for subcontracted work, in-
cluding that of Flooring. Appellees have
conceded arguendo that a contract was
formed between themselves and Flooring.
After Radisson/CSA contracted with Five
Star, a contract was formed between Five
Star and Flooring, with Five Star as the
general contractor and Flooring as the sub-
contractor. The subcontract specifically
provided the exact contract sum and terms

of payment to be made to Flooring by Five
Star, and a requirement that Flooring ap-
ply for periodic payments directly to Five
Star. The contract expressly incorporated
the CSA/Five Star contract, specifically
providing for the work to be done by Floor-
ing. Indeed, Five Star paid Flooring the
initial "deposit on contract" required in its
contract with CSA. Throughout the work,
Flooring submitted all payment requests to
Five Star, and not to CSA.

Five Star did not pay Flooring in full,
and subsequently filed for bankruptcy.
Flooring is still owed approximately $25,-
000 of the subcontract price of approxi-
mately $59,000. CSA has paid all but $25,-
000 of the total contract of approximately
$160,000 with Five Star. Flooring filed a
breach of contract and unjust enrichment
action against Radisson/CSA. Radis-
son/CSA obtained a summary judgment,
arguing that a novation occurred, substitut-
ing the Five Star/Flooring contract for the
CSA/Flooring contract.

On appeal, Flooring questions: (1) wheth-
er the trial court erred in concluding that
defendants established a novation as a mat-
ter of law; (2) whether there is a triable
issue of fact regarding Flooring's right to
recover from Radisson/CSA under an un-
just enrichment theory, and (3) whether the
trial court abused its discretion in awarding
attorney's fees to Radisson/CSA.

## NOVATION

Flooring argues that there is conflicting
evidence precluding summary judgment.
It contends that the second contract be-
tween itself and Five Star merely indicates
that an additional debtor, namely Five Star,
has been added to the original
CSA/Flooring agreement, rather than act-
ing as a substitute for that agreement.
Flooring also contends that a novation may
not occur unless the same parties are in-
volved in both contracts. We believe that
argument is without legal basis.

We find that the original
CSA/Flooring agreement was replaced by
the subsequent Five Star/Flooring con-
tract. Both the conduct of the parties and
common practice in the construction indus-

try would indicate that Flooring entered into a typical subcontract with a general contractor. Common practice dictates that Flooring should look to its general contractor, and not the owner (Radisson) for payment. The general contractor acts as a conduit for payment from the owner to the subcontractor. Indeed, Flooring did look to Five Star for payment from the time it received the initial deposit from Five Star and for all subsequent payment aplications. This was required by the Five Star/Flooring contract.

Contrary to Flooring's belief, a novation need not occur between the same parties as those to the original agreement. "It [novation] is generally used only when the substituted contract involves at least one new party; and according to the more general practice, this new party must be a substituted obligor in place of the former obligor or debtor who is discharged." 6 A. Corbin, Corbin on Contracts, § 1297 at 213 (1962). The creditor's (Flooring) assent is usually required, and may be inferred from his conduct and the circumstances, Corbin, supra, at 214–15, as the circumstances in the present case so indicate. The Five Star/Flooring contract involved the same subject matter, contract price and work specifications as the original CSA/Flooring contract. Additionally, it provided that all payments would be made by Five Star, not CSA. An ordinary interpretation of the contract language leads to the conclusion that the Five Star/Flooring contract was meant to supercede, and not merely supplement the CSA/Flooring contract. This conclusion is irrefutable in light of the circumstances before us, and the custom and usage of subcontracts in the construction industry. In *Brady v. Black Mountain Investment Co.*, 105 Ariz. 87, 459 P.2d 712 (1969), the Arizona Supreme Court held that the issue of novation is not always a question of the parties' intention, nor must it be express, but that it may be found by operation of law as a result of steps taken by the parties. See also *Catalina Groves, Inc. v. Oliver*, 73 Ariz. 38, 236 P.2d 1022 (1951). The *Brady* court relied upon language from an earlier supreme court case:

A contract will be considered as having been rescinded by the substitution of another and subsequent contract relating to the same subject-matter, where it appears to have been the intention of the parties, that the later contract should supersede the first one.... [citations omitted] Where the entire subject-matter is covered, and there is nothing on the face of the second agreement to show that it is intended to be supplemental to the original agreement, it supersedes and rescinds the original, not as a question of intention, but by operation of law, as a result of steps taken by the parties....

*Arizona–Parral Mining Co. v. Forbes,* 16 Ariz. 395, 406, 146 P. 504, 508 (1915), quoting *Redding v. Vogt,* 140 N.C. 562, 567, 6 Ann.Cas. 312, 313, 53 S.E. 337, 338 (1906).

### UNJUST ENRICHMENT ISSUE

█ Flooring further argues that Radisson has been unjustly enriched by the retention of approximately $25,000 of the funds owed to Five Star. We disagree. First, Flooring's reliance upon *Costanzo v. Stewart,* 9 Ariz.App. 430, 453 P.2d 526 (1969), is misplaced. There, the court found in favor of a subcontractor where the owner paid no one for the work performed by the subcontractor. In the present case, Radisson/CSA has paid Five Star a substantial portion of the contract price, and has retained the sum in question pursuant to Article 6.2 in the contract, which provides that the owner may withhold final payment until the general contractor has "satisfied all known indebtedness." Five Star defaulted on payments to subcontractors, thereby justifying the retention of final payment. In its response to plaintiff's motion for reconsideration, Radisson/CSA assured the court that it had no intention to permanently retain the sum, but was merely exercising its contractual right to withhold the final payment until Five Star's creditor's claims had been liquidated and satisfied. It is not the role of an owner in an owner-general contractor relationship to determine which subcontractors should be paid and the amount they

are due. That function is an important reason for employing a general contractor.

Second, Flooring relies upon a recent case to argue that Arizona courts allow a subcontractor to sue an owner for unjust enrichment even where there is an express contract between the subcontractor and the general contractor. *Commercial Cornice & Millwork, Inc. v. Camel Construction Services Corp.*, 154 Ariz. 34, 739 P.2d 1351 (App.1987). Again, Flooring's reliance is misplaced. In *Commercial Cornice*, during construction, the owner individually and personally agreed to pay the subcontractor upon completion of all the required work. No similar personal guaranty during construction was made in the present case. Thus, no contractual relationship establishing a basis for liability was ever formed between Raddison/CSA and Flooring. Id; *Costanzo v. Stewart*, supra. The court in *Commercial Cornice* distinguished cases relied upon by both the owner in that case and the present case, on the basis that in those cases the owners had fully paid the general contractors under the terms of the contract. However, the general contractors failed to pay the subcontractors. Thus, no unjust enrichment existed in favor of the owners. Similarly, Radisson/CSA has paid its general contractor pursuant to the contract, and is only withholding those funds it is permitted to retain according to the terms of the contract. It is Five Star, as the general contractor, who has failed to pay the subcontractors in full. The rule of *Commercial Cornice* is inapplicable in the present case. Flooring has no basis upon which to hold Radisson/CSA liable for unjust enrichment.

### ATTORNEY'S FEES

The trial court awarded Radisson/CSA $10,000 in attorney's fees. Flooring argues that this award constituted a gross injustice. We will not substitute our discretion for that of the trial court regarding attorney's fees where the record contains a reasonable bsais to sustain the decision of the court. *Wheel Estate Corp. v. Webb*, 139 Ariz. 506, 679 P.2d 529 (App. 1983). The record supports the award in this case.

Appellees' request for attorney's fees on appeal will be granted upon compliance with Ariz.R.Civ.App.P., 21(c), 17A A.R.S.

Affirmed.

FERNANDEZ, J., concur.

HOWARD, Presiding Judge, dissenting.

The appellant is in a "Catch 22" situation. The majority has decided it is not entitled to proceed against the appellees on the theory of unjust enrichment because appellee has a right to withhold the final payment until the general contractor has "satisfied all indebtedness." The general contractor has not "satisfied all indebtedness" nor any indebtedness, as far as the record shows, since the suit was instituted. There is no evidence that the general contractor will ever satisfy all indebtedness. A question of fact exists as to whether the general contractor will ever satisfy the requirements of its contract with the owner. Thus, summary judgment is precluded. If the evidence in the trial court is that the general contractor will never be able to pay, then *Costanzo v. Stewart*, 9 Ariz.App. 430, 453 P.2d 526 (1969), applies because the general contractor has not been paid. I would reverse and remand for further proceedings.