959 F.2d 240
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Donald W. DOTY, Loveltalene Doty, husband and wife; and
Ricky (Rick) Seaman, single man, Plaintiffs-Appellants,
v.
BRUNSWICK CORPORATION, dba Mercury Marine, Defendant-Appellee.
 No. 90-16429.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 6, 1991.
Decided April 2, 1992.
 
 1
 Before WILLIAM A. NORRIS and BOOCHEVER, Circuit Judges, and GILLIAM, District Judge*.
 
 
 2
 MEMORANDUM**
 
 
 3
 Donald Doty, Loveltalene Doty, and Ricky Seaman appeal the district court's grant of summary judgment for Brunswick Corporation, doing business as Mercury Marine ("Mercury"). We have jurisdiction pursuant to 28 U.S.C. § 1291. We affirm.
 
 BACKGROUND
 
 4
 U.S. Bass was a corporation that promoted bass fishing tournaments and published fishing periodicals. Mercury manufactures and sells boat motors. On November 14, 1984, Mercury agreed to support U.S. Bass' tournaments, programs, and services by supplying goods and money. In turn, U.S. Bass agreed to promote Mercury's name and products.
 
 
 5
 U.S. Bass hired Donald Doty ("Doty") and Rick Seaman ("Seaman") in 1985. In late 1985, Doty and Seaman learned Mercury was very dissatisfied with U.S. Bass and its president and sole owner, Mr. Schultz. Thereafter, Doty, Seaman, and Mercury discussed the possibility of Doty and Seaman's purchase of U.S. Bass. Mercury expressed interest in continuing its sponsorship but refused to do business with Mr. Schultz.
 
 
 6
 On March 7, 1986, Mercury sent a "Letter of Intent" to Doty and Seaman as "prospective new owners of U.S. Bass, Inc." The letter expressed Mercury's interest in continuing its sponsorship with U.S. Bass, envisioned "a new contract will be developed," and listed a number of conditions.
 
 
 7
 In accordance with Mercury's conditions, Doty and Seaman purchased U.S. Bass on March 11, 1986, and terminated Mr. Schultz's relationship with the corporation. In May 1986, pursuant to another condition, U.S. Bass terminated its relationship with Yamaha, one of its sponsors.
 
 
 8
 On May 23, 1986, Mercury sent an agreement to U.S. Bass for Doty's approval. On July 20, 1986, Mercury and Doty and Seaman, as officers of U.S. Bass, executed that agreement. The contract provided it "constitute[d] the entire agreement between the parties and supersede[d] all prior agreements and understandings, both written and oral, including specifically the November 14, 1984, agreement between the parties [i.e., Mercury and U.S. Bass under Schultz]."
 
 
 9
 On May 26, 1987, Mercury, pursuant to the July 1986 Agreement, cancelled its contract effective December 31, 1987. Seaman wrote to Mercury on June 1, 1987, acknowledging the cancellation.
 
 
 10
 On March 17, 1989, appellants sued Mercury alleging it had breached its Letter of Intent with them personally. On August 20, 1990, the district court heard Mercury's motion for summary judgment. The court ruled that the Letter of Intent novated any previous oral agreement. The court also concluded that the Letter of Intent was then novated by the July 1986 Agreement. Based on these conclusions, the court granted summary judgment for Mercury.
 
 
 11
 Judgment for Mercury was entered on August 20, 1990. Appellants filed their Notice of Appeal on September 14, 1990.
 
 DISCUSSION
 
 12
 Summary judgment rulings are reviewed de novo to determine whether there are any genuine disputes of material fact and whether the law was correctly applied. Mead Reinsurance v. Granite State Ins. Co., 873 F.2d 1185, 1187 (9th Cir.1988). To defeat a motion for summary judgment, the party bearing the burden of proof must produce evidence sufficient to create a triable issue of fact on each essential element of its case. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).
 
 
 13
 Appellants argue the lower court erred in granting summary judgment because the oral contract and the Letter of Intent were not novated by the July 1986 Agreement. They also argue that even if novation occurred, the July 1986 contract is void because it was procured under duress. We conclude these arguments lack merit.
 
 
 14
 Mercury's cancellation under the terms of the July 1986 Agreement was not a breach of any other prior agreement because the July 1986 Agreement constituted a novation that superseded and replaced all prior agreements. The court in United Sec. Corp. v. Anderson Aviation Sales Co., Inc., 532 P.2d 545, 547 (Ariz.Ct.App.1975) set forth the elements of novation: "a previously valid obligation, the agreement of all parties to a new contract, the extinguishment of the old obligations, and the validity of the new one." These elements are met in this case.
 
 1. Previous Valid Obligation
 
 15
 Seaman and Doty concede that the March 1986 Letter of Intent constitutes a valid obligation, but argue that a second valid obligation exists as well: an oral agreement they purportedly reached with Mercury shortly before the March 1986 Letter of Intent. This oral agreement, however, was merged into and superseded by the Letter of Intent, which reduced the oral agreement to writing. See Pinnacle Peak Developers v. TRW Inv. Corp., 631 P.2d 540, 548 (Ariz.Ct.App.1980). Both parties discussed memorializing their oral negotiations and agreements in a letter of intent. In addition, the Letter of Intent explicitly referred to the oral agreement when it mentioned the goals of the relationship between U.S. Bass and Mercury. The record reflects Doty and Seaman accepted the Letter without objection and performed the conditions therein. A confirming letter, accepted without objection, supersedes and replaces any prior oral understanding. Restatement (Second) of Contracts § 209 (1981). Therefore, the Letter of Intent superseded and replaced the prior oral agreement, and was the sole valid obligation existing prior to the July 1986 Agreement. Because the oral agreement was superseded, it cannot form the basis for a breach of contract action, and we need not consider it further in determining whether the July 1986 Agreement constituted a novation.
 
 
 16
 2. Agreement of All Parties to a New Contract
 
 
 17
 Appellants contend the July 1986 Agreement was not a new contract between all the parties to the Letter of Intent. Doty and Seaman argue they signed the Letter of Intent as individuals whereas they signed the 1986 Agreement as officers and on behalf of U.S. Bass. Even accepting as true appellants' premise that different parties were involved in the two agreements, however, does not alter our conclusion that the July 1986 Agreement was a novation.
 
 
 18
 Arizona law does not require the involvement of same parties for a novation of a prior agreement to occur. Flooring Systems v. Radisson Group, 761 P.2d 733, 735 (Ariz.Ct.App.1988) (noting novation is "generally used only when the substituted contract involves at least one new party ... [,] a substituted obligor in place of the former obligor"), rev'd in part on other grounds, 772 P.2d 578, 582 (Ariz.1989). Where different parties are involved because a new obligor has been substituted, a novation will be found if the original parties either intend the new contract to supersede the original contract, or if the parties take steps that result in a novation by operation of law. Id. (quoting Arizona-Parral Mining Co. v. Forbes, 146 P. 504, 508 (Ariz.1915)). A novation by operation of law occurs if the entire subject matter of the original contract is covered by the later agreement and the second agreement does not indicate that it is intended to supplement the original agreement. Id.
 
 
 19
 Here, U.S. Bass replaced Doty and Seaman as the obligor in the July 1986 Agreement with Mercury. The March 1986 Letter of Intent contemplates that a written contract would be developed to include, and thus impliedly supersede, the terms of the sponsorship relationship between U.S. Bass and Mercury outlined in the Letter of Intent. We consider this a sufficient expression of intent by Doty, Seaman, and Mercury that the written contract, which was eventually executed in July 1986, would supersede the Letter of Intent.
 
 
 20
 In addition, the July 1986 Agreement also became a novation by operation of law. First, it covers the same subject matter as the March 1986 Letter of Intent: the terms and conditions of Mercury's sponsorship of U.S. Bass events. Second, in a supersession clause the July 1986 Agreement expressly states that it is not intended to supplement the Letter of Intent: "The AGREEMENT constitutes the entire agreement between the parties and supersedes all prior agreements and understandings, both written and oral, including specifically the November 1984 agreement between the parties." We do not find it relevant that the Letter of Intent was not specifically mentioned in the supersession clause.
 
 
 21
 In sum, the July 1986 agreement constituted a new contract agreed to by each of the parties to the March 1986 Letter of Intent.
 
 3. Extinguishment of the Old Obligations
 
 22
 Appellants urge that the Letter of Intent remains viable because their personal obligations under the Letter were not incorporated in and thus not extinguished by the July 1986 Agreement. Specifically, the Letter of Intent required Doty and Seaman to buy U.S. Bass and exclude Schultz from any involvement in the company. In addition, Doty and Seaman had to exclude all of Mercury's competitors from sponsoring U.S. Bass. These conditions allegedly were continuing obligations which Doty and Seaman had to execute personally under the Letter of Intent because U.S. Bass as a corporation could not perform those obligations under the July 1986 Agreement.
 
 
 23
 "The controlling rule of interpretation requires that the ordinary meaning of language be given to words where circumstances do not show a different meaning applicable." Brady v. Black Mountain Investment Co., 459 P.2d 712, 714 (Ariz.1969). The Letter of Intent listed "firm conditions by Mercury Marine in committing to continuing [its] U.S. Bass sponsorship." Nothing in the Letter of Intent indicated those conditions would continue once Mercury committed to sponsor U.S. Bass, which it did in the July 1986 Agreement. Once Doty and Seaman fulfilled the conditions, their obligations under the Letter of Intent were extinguished.
 
 
 24
 The remaining conditions and considerations enumerated in the Letter of Intent were incorporated in and thus extinguished by the July 1986 Agreement.
 
 4. Validity of the New Contract
 
 25
 a. Consideration
 
 
 26
 Appellants argue that the new contract lacked consideration and is thus invalid. They contend the new contract does not exact consideration from Mercury or U.S. Bass different from the consideration required under the Letter of Intent. Even if the court finds Mercury gave additional prizes and money to U.S. Bass under the July 1986 contract, appellants allege the additional prizes and money compensate for what Yamaha would have given U.S. Bass. Because U.S. Bass had to eliminate Yamaha as a sponsor, the compensation purportedly is not new consideration.
 
 
 27
 Consideration is "a benefit to the promisor and a detriment to the promisee." Carroll v. Lee, 712 P.2d 923, 926 (Ariz.1986). Contrary to appellants' arguments, Mercury promised to sponsor more tournaments and give more prizes under the July 1986 Agreement than under the Letter of Intent. Whether the new consideration compensates for Yamaha's previous obligations is irrelevant to whether there is consideration for the July 1986 Agreement. The increase in sponsorship and prizes constitutes consideration; therefore the July 1986 Agreement is valid.
 
 
 28
 b. Duress[1]
 
 
 29
 Appellants urge that the July 1986 Agreement is invalid because it was procured through economic duress. They aver that when Mercury presented them with the July 1986 Agreement containing the invoked cancellation clause, they had already purchased U.S. Bass, personally assumed the company's obligations, and cancelled its agreements with other sponsors. Therefore, Doty and Seaman allegedly had no choice but to sign the July 1986 Agreement especially because they were relying on the $25,000 payment which Mercury made contingent on the execution of the Agreement.
 
 
 30
 Arizona law provides that contracts obtained under duress are unenforceable. U.S. Life Title Company of Arizona v. Gutkin, 732 P.2d 579, 586 (Ariz.Ct.App.1986). However, the existence of a reasonable alternative defeats the claim of economic duress. See Pleasants v. Home Federal Sav. & Loan Ass'n, 569 P.2d 261, 263 (Ariz.Ct.App.1977). Seaman admitted in deposition testimony that he assumed Yamaha was available as a sponsor at the time the July 1986 Agreement was executed. Whether or not the assumption was true, it defeats the claim of economic duress.
 
 CONCLUSION
 
 31
 Based on the undisputed facts, the July 1986 contract between Mercury and U.S. Bass constituted a novation of the March 1986 Letter of Intent. Mercury's cancellation, which admittedly complied with the terms of the July 1986 contract, therefore, did not breach any existing agreement between the parties.
 
 
 32
 AFFIRMED.
 
 
 
 *
 Honorable Earl B. Gilliam, United States District Judge for the Southern District of California, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3
 
 
 [1]
 Contrary to the representations of Doty, Seaman, and Mercury, the district court did not rule on the issue of duress